814 So.2d 402 (2002)
Mark Dean SCHWAB, Appellant,
v.
STATE of Florida, Appellee.
Mark Dean Schwab, Petitioner,
v.
Michael W. Moore, etc., et al., Respondents.
Nos. SC97008, SC00-1629.
Supreme Court of Florida.
March 28, 2002.
*405 Robert T. Strain, Assistant CCRC, and Denise L. Cook, Assistant CCRC, Capital Collateral Regional Counsel-Middle Region, Tampa, FL, for Appellant/Petitioner.
Robert A. Butterworth, Attorney General, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
Mark Dean Schwab appeals an order of the circuit court denying his motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9) Fla. Const. We affirm the denial of Schwab's postconviction motion and deny the petition for habeas corpus.

I. BACKGROUND
The facts of this crime were set forth in Schwab v. State, 636 So.2d 3, 4 (Fla.1994):
Early in March 1991 Schwab was released from prison after serving three and one-half years of an eight-year sentence for committing sexual battery on a thirteen-year-old boy. In the middle of March a picture of eleven-year-old Junny Rios-Martinez appeared in a local newspaper. Several days later Schwab called the Rios-Martinez home, pretended to be a reporter, and claimed that he wanted to write an article on Junny. Schwab ingratiated himself with the family over the next several weeks, eventually claiming that he could get Junny a contract to represent a surfing company.
After school on April 18, 1991, a classmate saw Junny at a little league ball field and saw him get into a U-haul truck with a tall man. Two days later Schwab was in Ohio and called his aunt. He told her that someone named "Donald" had forced him to kidnap and rape the child or else Donald would kill Schwab's mother. On April 21 the police went to the aunt's home, and when Schwab called while they were there, she allowed them to record the call. She also gave officers permission to tap her telephone, and, when Schwab called later that evening, they traced the call and arrested him in a nearby town. Besides the recorded statements to his aunt, Schwab also gave statements to Sergeant Blubaugh, a Cocoa policeman, who flew to Ohio with assistant state attorney Chris White. The day after his arrest, Schwab, Blubaugh, and White flew back to Florida. Back in Brevard County Schwab eventually indicated where the victim's body could be found. The police found the body in a rural, undeveloped area of the county, stuffed into a footlocker.
After a non-jury trial, Judge Edward J. Richardson found Schwab guilty of first-degree murder, sexual battery of a child, and kidnaping. Judge Richardson sentenced Schwab to death on the murder conviction and imposed consecutive life sentences on the other conviction.[1] We affirmed Schwab's conviction and sentence on direct appeal. See Schwab, 636 So.2d at 4.
On December 15, 1995, Schwab filed his first Florida Rule of Criminal Procedure *406 3.850 postconviction motion. Schwab moved to disqualify Judge Richardson from presiding over the postconviction proceedings. Judge Richardson granted the motion, and Judge Charles M. Holcomb was assigned to preside over Schwab's postconviction proceedings.
On April 15, 1998, Schwab filed an amended rule 3.850 motion. A Huff[2] hearing was held, and an evidentiary hearing was granted. After conducting the evidentiary hearing, Judge Holcomb denied all of Schwab's postconviction claims. This consolidated appeal of Schwab's postconviction motion and petition for writ of habeas corpus followed.

II. 3.850 APPEAL
Schwab raises eleven claims in his postconviction appeal.[3] We find several claims to be either procedurally barred,[4] without merit[5], or both. We turn to the issues that merit further discussion.

Judicial Bias
In his first and second claims, Schwab asserts that his case was not adjudicated *407 by a fair and impartial tribunal. Schwab's first judicial bias claim is based on two affidavits filed prior to trial by attorneys who were prosecutors in the state attorney's office in 1991 but who were not Schwab's prosecutors. The affidavits stated that prior to the trial and before an arrest had been made a few attorneys were in the clerk's office reading a newspaper article regarding the kidnaping and murder of the victim. Schwab had been identified in the paper as a suspect. According to the affidavits, Judge Richardson entered the office, and one of the attorneys asked Judge Richardson if he would like such a case. Judge Richardson initially responded, "Not me," but then he said, "Sure I'd like that case" and made the gesture of firing an imaginary hand pistol at the attorneys.
Upon the filing of the affidavits, Judge Richardson held a hearing on July 3, 1991. At the hearing, the State filed a document entitled "State's Questions for In Camera Inquiry," which the State wanted to use to question Schwab as to his knowledge and understanding of the prosecutors' affidavits, especially in light of Schwab's waiver of a jury trial. Schwab's defense attorneys responded that they were aware of the affidavits and had discussed the affidavits with Schwab, yet they did not want to move to recuse on such grounds. In fact, Schwab's defense counsel stated that they would oppose a State motion to recuse. Judge Richardson engaged Schwab in an open-court colloquy, explaining to Schwab that the failure to file a prompt motion to disqualify would preclude Schwab from raising on appeal a judicial bias claim on the basis of these affidavits. Under oath, Schwab responded that he had read the affidavits, had discussed them and their significance with his attorneys, and understood that the failure to file a prompt motion to disqualify would constitute a waiver. Schwab did not file a motion to disqualify Judge Richardson.
We have held that where the grounds for a judicial bias claim are known at the time of the original trial, yet are not raised, such claims are waived and cannot be raised in a postconviction appeal. See Asay v. State, 769 So.2d 974, 979 (Fla. 2000); Rivera v. State, 717 So.2d 477, 481 n. 3 (Fla.1998); Stano v. State, 520 So.2d 278, 281 (Fla.1988); Zeigler v. State, 452 So.2d 537, 539 (Fla.1984); see also § 38.02, Fla. Stat. (1991) (motions to disqualify must be filed within thirty days after the party learns of grounds for disqualification); Fla. R. Jud. Admin. 2.160(e) ("A motion to disqualify shall be made within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion and shall be promptly presented to the court for an immediate ruling.").[6] Schwab's judicial bias claim is procedurally barred because Schwab failed to seek the disqualification of Judge Richardson after having specific knowledge of the grounds now claimed. See Asay, 769 So.2d at 979-980.
Schwab argues that when these affidavits were filed, Judge Richardson should have recused himself on his own motion in accordance with Canon 3 E of the Code of Judicial Conduct[7] in order to *408 eliminate the appearance of judicial bias. We do not agree. We conclude that Judge Richardson proceeded appropriately when he became aware of the affidavits. The cases cited by Schwab, in which we stated that the trial judge should have recused himself in accordance with Canon 3 E, do not control in the present case. In Maharaj v. State, 684 So.2d 726, 727 (Fla.1996), we found that the trial judge should have recused himself from a 3.850 proceeding regardless of whether a motion to disqualify was filed. After the appellant in Maharaj commenced his appeal of the denial of his rule 3.850 motion, appellant discovered that the trial judge had been the supervising attorney of the attorneys who prosecuted the appellant. See id. In contrast, in the present case, we encounter a situation in which Schwab, with the advice of counsel, waived his right to file a motion to recuse the judge, having specific knowledge of the allegations of judicial bias.
Second, Schwab contends that Judge Richardson demonstrated his bias throughout the trial by discounting the weight of nonstatutory mitigation, improperly relying on the State's mental health expert and his own experience on the criminal bench, failing to order Schwab to submit to a competency examination, and failing to grant Schwab's motion requesting that a separate judge hear a motion in limine regarding similar fact evidence.[8] All of the matters raised were rulings by Judge Richardson which could have been and should have been, if well grounded, raised on direct appeal. All of the matters now raised were rulings Judge Richardson made adverse to Schwab. Thus, the grounds of Schwab's judicial bias claims were known by the defense at the time of trial, yet Schwab never filed a prompt motion to recuse. Therefore, Schwab's judicial bias claim is procedurally barred. See Asay, 769 So.2d at 979-980.

Ineffective Assistance of Counsel
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth a two-prong test to be applied by courts in analyzing claims of ineffective assistance of counsel. See Cherry v. State, 781 So.2d 1040, 1048 (Fla. 2000). As to the first prong, the Supreme Court stated that "the defendant must show that counsel's representation fell below an objective standard of reasonableness" based on "prevailing professional norms." Strickland, 466 U.S. at 688, 104 S.Ct. 2052. Under the second prong of the test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. 2052. The Supreme Court defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." Id. With respect to claims of ineffective assistance of counsel, we defer to the trial court's findings of fact so long as there is competent, substantial evidence in the record. See Stephens v. State, 748 So.2d 1028, 1033-34 (Fla.1999). We review whether counsel was ineffective and whether the defendant was prejudiced by any ineffectiveness as mixed questions of law and fact. See id. "[T]here is no reason for a court deciding an effective assistance claim... to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697, 104 S.Ct. 2052. "[A] court need not determine whether counsel's performance *409 was deficient before examining whether the alleged deficiency was prejudicial." Eutzy v. State, 536 So.2d 1014, 1015 (Fla.1989).

Issue 4Ineffective Assistance of Counsel During the Guilt Phase
Schwab claims that his counsel was ineffective during the guilt phase, alleging that counsel failed to make an informed decision to advise the waiver of a jury trial, failed to move for a change of venue, and made misrepresentations to Schwab which precluded him from filing a motion to disqualify Judge Richardson. Schwab also claims that his counsel failed to ensure that all the pretrial and capital trial proceedings were transcribed for appellate review.
In the order denying Schwab's postconviction motion, the trial court set forth the following in respect to these claims:
CLAIM XI
The eleventh claim raised by Defendant alleges he was denied "an adversarial testing at the guilt-innocence phase of his capital trial." Defendant raises a number of issues that will each be addressed in turn.
First, Defendant states he was denied effective assistance of counsel due to the fact that the two attorneys assigned to his case by the Office of the Public Defender were inexperienced and had never proceeded with a capital case through trial. Defendant states his representation by the Office of the Public Defender was also impaired by the fact that there were no investigators specifically trained in capital work, and no mitigation specialists.
Testimony at the hearing on Defendant's motion revealed that the lead attorney at trial, Brian Onek, had been a practicing attorney for nine years, exclusively practicing in criminal defense. Prior to Defendant's trial, Mr. Onek had taken approximately seventy to one hundred felony cases to trial. Furthermore, he had previously worked on several death penalty cases, although none of those cases had gone to trial. In preparation for this case, Mr. Onek was in regular contact with Defendant who actively participated in his defense. In fact, Mr. Onek expressed his desire to the Public Defender, J.R. Russo, the need to devote his time and energy nearly exclusively to Defendant's case, and was granted that request. Mr. Onek traveled to Ohio, and assigned an investigator from his office to also travel to Ohio to investigate the case. Numerous psychiatrists and psychologists were contacted and retained to analyze Defendant's mental state and possible factors to be used as mitigating circumstances. Mr. Onek attended seminars, and read case law and literature in an attempt to further his knowledge entering into, and in trying this case. Throughout the period of time while preparing Defendant's case for trial and through the trial, Mr. Onek spoke to numerous attorneys in his office regarding this case, and also spoke to experts at seminars regarding how to proceed in this case. Mr. Onek specifically told Mr. Russo he wanted the "best experts," and was given the funding to procure the experts needed to prepare Defendant's case. There is nothing in the record to indicate Mr. Onek or the Office of the Public Defender did anything but represent Defendant in a zealous, competent, and accomplished manner. As stated by Mr. Onek, the facts of the case were the facts, and he could not change them.
Defendant also claims he was denied effective assistance of counsel by the *410 "inference [sic] of trial court and prosecutorial misconduct." This Court has been provided no evidence of either of those factors.
Next, Defendant claims his counsel failed to investigate the possible consequences of waiving a jury trial. This claim was refuted by every witness called to testify at Defendant's hearing on this motion.
Defendant also claims his counsel was ineffective by failing to request a change of venue. A presumption exists that the challenged action constitutes sound strategy on the part of the defense attorney. "Courts therefore must review the reasonableness of counsel's assistance in light of the facts of the particular case at the time of counsel's conduct." Chateloin v. Singletary, 89 F.3d 749, 752 (11th Cir.1996). See also, Mills v. State[,] 684 So.2d 801 (Fla.1996). "The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Huynh v. King, 95 F.3d 1052, 1055 (11th Cir. 1996).
As stated by each of the attorneys that testified at the hearing, the decision to proceed with a non-jury trial and therefore not request a change of venue was clearly a trial strategy. It was firmly believed that Defendant would be found guilty and receive a recommendation of the death penalty from any jury selected. There was no need to request a change of venue.
The next issue posed in Defendant's post-conviction motion with regard to the failure of trial counsel to request a change of venue also supported the trial strategy on the part of trial counsel. Although specifically targeting alleged judicial bias as raised in Claim XI, Defendant's motion states, "In such an atmosphere of public hostility toward Mr. Schwab, even absent overt judicial bias, it was impossible for any trier of fact not to be swayed by the extensive and sensational pretrial news coverage of this case." Again, Defendant has presented no evidence to support the finding that the trial judge was biased or that the decision not to request a change of venue was anything but sound trial strategy. Furthermore, Defendant has made no showing of prejudice as required in [Strickland, 466 U.S. at 689, 104 S.Ct. 2052].
Next, Defendant claims his trial counsel was ineffective due to the fact that a transcript of the grand jury proceeding was never requested. Defendant has presented no evidence that the transcript was not requested, and furthermore, Defendant has presented no evidence to show how he was prejudiced by the absence of the transcripts.
Claim XI goes further to state that Defendant was denied effective assistance of counsel by the failure to present mental health evidence showing Defendant could not have formed the specific intent required to commit these crimes. Counsel for Defendant stated that he was hoping to present such evidence. However, after Defendant had been examined by numerous mental health experts, no such evidence existed. This does not state a viable claim for relief.
Claim XI is denied.
State v. Schwab, No. 91-7249-CF-A at 5-8 (Fla. 18th Cir. Ct. order filed Oct. 12, 1999). We find that there is competent, substantial evidence to support the trial court's factual determinations and approve the legal conclusion that Schwab failed to establish a claim for ineffective assistance of counsel in the guilt phase of the trial.
*411 The evidence shows that Schwab's counsel made an informed tactical decision not to file a motion to disqualify Judge Richardson and to waive the jury. See Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000)("[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct."). As the trial judge found, counsel Onek was experienced in trying felony cases in Brevard County, having taken seventy to one hundred cases to trial. Counsel Onek drew upon this experience as well as discussing the case with numerous other lawyers in the public defender's office. Onek also attended seminars in which he spoke with experts about the case. While the record reflects that the Chief Assistant Public Defender for Brevard County in 1991, Marlene Alva, testified at the evidentiary hearing that her opinion was that the jury trial should not be waived, she understood the logic of waiving the jury in the present case.
Our review of the record further demonstrates that Schwab was fully cognizant of the possible consequences of waiving the jury, not filing a motion to disqualify, and not filing a motion to change venue. Judge Richardson engaged Schwab in three different colloquies to ensure that Schwab was afforded due process in waiving his rights. In these colloquies Judge Richardson extensively explained to Schwab that he had a right to a jury trial, that he had a right to file a motion to change venue, and that he had a right to file a motion to recuse. Schwab testified at the evidentiary hearing that he had discussed the jury waiver in light of the prosecutors' affidavits with his attorneys and that he understood and answered truthfully the questions posed in the colloquies conducted by Judge Richardson. Schwab even complied with Florida Rule of Criminal Procedure 3.260 by filing a signed written waiver of a trial by jury.
Therefore, the failure to seek disqualification of Judge Richardson and the waiver of the jury are not well-grounded bases for relief founded on ineffective assistance of counsel. See Occhicone, 768 So.2d at 1048. Moreover, the waiver of the right to a trial by jury renders the change of venue issue moot since Judge Richardson would have been the trial judge regardless of the venue of the trial. See Fla. R. Jud. Admin. 2.180(b) ("The presiding judge from the originating court shall accompany the change of venue case....").
We find Schwab's next ineffectiveness claim, that his counsel failed to prepare a complete and accurate record, to be without merit. At trial, Schwab presented Dr. Howard Bernstein, who based his opinion on the opinions of two other mental health experts which were presented through videotape. Schwab argues that because the videotaped opinions of the mental health experts Dr. Bernstein relied on were not transcribed, the record is unclear as to what portions of the videotapes Judge Richardson heard and considered. These videotapes were properly introduced into evidence at trial and are a part of this record. Schwab has failed to demonstrate how he was prejudiced by not having the transcripts of these videotapes in the record. Thus, Schwab's claim is without merit. Schwab next claims that his trial counsel failed to ensure that the transcript of the hearing that occurred on July 3, 1991, be included in the direct appeal record. At this hearing, the State presented defense counsel and Judge Richardson with the prosecutors' affidavits concerning Judge Richardson's prior comments. At the July 3, 1991, hearing, Judge Richardson asked Schwab questions designed to *412 ensure that Schwab knew that the failure to file a prompt motion to disqualify would constitute a waiver of a judicial bias claim based on the prosecutors' affidavits. Furthermore, as discussed, the issue of judicial bias was exhaustively dealt with in the record. Schwab does not point to and we do not find any evidence that any prejudice resulted from the alleged failure to include the transcript of such hearing in the direct appeal record. Therefore, we affirm the trial court's rejection of this ineffectiveness subclaim.

Issue 5Ineffective Assistance of Counsel During the Penalty Phase
Schwab claims that his counsel was ineffective during the penalty phase. Schwab argues that his counsel was ineffective for presenting Schwab's father as a mitigation witness while knowing that Schwab's father would deny allegations of abusing Schwab and Schwab's mother. Schwab also argues that his counsel failed to investigate the waiver of the penalty phase jury, failed to neutralize the prior violent felony and the murder committed during the commission of an enumerated felony aggravating circumstances, and failed to provide the assistance of a competent mental health expert.
At the evidentiary hearing, Schwab's counsel testified that he understood that the testimony of Schwab's father and mother would differ as to the alleged abuse endured by Schwab and Schwab's mother. However, counsel testified that he presented the father's testimony because he believed that Judge Richardson needed to have a full understanding of Schwab's childhood. Counsel also testified that he believed the father testified very well and that Schwab's parents' testimony did not conflict. We conclude that the presentation of the testimony of both of Schwab's parents was a strategic decision which counsel could reasonably make. See Mann v. State, 770 So.2d 1158, 1161 (Fla. 2000) (finding trial counsel's decision to present evidence of pedophilia was strategic decision not outside range of reasonable competent performance); Occhicone, 768 So.2d at 1048. In fact, in weighing the aggravators and mitigators, Judge Richardson found as a mitigating factor that Schwab grew up in an unstable home. Such finding may have been based on the presentation of testimony from both parents.
Schwab next argues that his counsel failed to investigate the waiver of an advisory penalty phase jury. As discussed above, Schwab and his counsel were completely aware of the possible consequences in waiving the advisory jury. Schwab and his counsel made an informed tactical decision in respect to both the guilt phase and the penalty phase. Hence, as with the guilt phase waiver of the jury, Schwab cannot establish his counsel's deficient performance in respect to the penalty phase. See id.
Schwab's next ineffectiveness subclaim is that his counsel failed to neutralize two aggravating circumstances presented at Schwab's penalty phase. The prior violent felony conviction aggravator found at Schwab's penalty phase was based on Schwab's guilty plea for sexual battery. See Schwab, 636 So.2d at 7. Schwab argues that if counsel had properly investigated, counsel would have discovered that Schwab's deficient mental condition prohibited his entering a knowing, intelligent, and voluntary guilty plea for his prior sexual battery conviction.[9] Schwab also *413 argues that because Schwab did not plead guilty to either sexual battery or kidnaping during the guilt phase of trial, counsel was ineffective for stipulating at the penalty phase to the aggravating factor that the murder was committed during the commission of a violent felony.
In our opinion regarding Schwab's direct appeal, we discussed and found no error in the trial court's finding of aggravating circumstances.
The record supports all three aggravators. The state introduced Schwab's prior conviction of sexual battery, and the evidence supports his instant conviction of kidnapping and sexual battery of a child. We agree with the trial court's conclusion that the facts also demonstrate the murder to have been committed in a heinous, atrocious, or cruel manner.
Schwab, 636 So.2d at 7. Preliminarily, we find that these ineffectiveness subclaims challenge the propriety of the aggravating circumstances but veil such challenge in an ineffective assistance of counsel argument. Therefore, as we found such aggravators valid on direct appeal, we find Schwab's subclaims are procedurally barred. See, e.g., Rutherford v. State, 727 So.2d 216, 218-19 n. 2 (Fla.1998) (finding procedurally barred claims that could have been raised on direct appeal even though couched in ineffective assistance of counsel argument). Notwithstanding this procedural bar, these claims are without merit. Schwab presented no evidence to support his assertion that his prior felony conviction for sexual battery was invalid. Furthermore, Schwab's argument that his trial counsel should not have stipulated to the murder during the commission of an enumerated felony aggravator is similarly without merit as Schwab was convicted of sexual battery of a child and kidnaping after adversarial testing at the guilt phase of trial. See Schwab, 636 So.2d at 7-8. Given these concurrent felony convictions, counsel was not ineffective for acknowledging this fact. See, e.g., Patton v. State, 784 So.2d 380, 390 (Fla.2000) (finding facts counsel conceded were supported by overwhelming evidence and, even if counsel had denied these facts, there was no reasonable possibility jury would have rendered different verdict). Therefore, relief was properly denied.
Schwab next contends that his counsel was ineffective for failing to ensure that Schwab had access to a competent mental health expert for the purpose of evaluating, preparing, and presenting mitigation evidence for the defense. See Ake v. Oklahoma, 470 U.S. 68, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); see also Mann, 770 So.2d at 1164. The trial judge found that Schwab presented no evidence to support this claim. We agree. Ake requires that a defendant have access to a "competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Ake, 470 U.S. at 83, 105 S.Ct. 1087. Schwab's counsel presented Dr. Bernstein, an expert in psychological evaluation, who testified as to mental mitigation evidence at the penalty phase. Dr. Bernstein testified that in conducting his evaluation he interviewed Schwab twice and interviewed Schwab's mother once. Dr. Bernstein conducted a mental status examination and lengthy psychological tests, including the Minnesota Multiphasic Personality Inventory (MMPI) and the MMPI II, among various others. Dr. Bernstein also testified that he reviewed and relied on the videotaped opinions of Dr. Fred Berlin and Dr. Ted Shaw in forming his diagnosis of Schwab. Dr. Berlin *414 and Dr. Shaw, experts in the diagnosis and treatment of mentally disordered sex offenders, interviewed and evaluated Schwab. Dr. Berlin gave a formal sexual disorder diagnosis, and Dr. Shaw provided information concerning the potential benefits Schwab could have received had he been admitted to certain treatment programs. Portions of these videotapes were presented to Judge Richardson. On the basis of this evaluation, Dr. Bernstein diagnosed Schwab as a pedophile operating at a regressed level of maturity who exhibited violent sexual deviant behavior. Schwab's counsel performed the essential tasks required by Ake. See Mann, 770 So.2d at 1164. Therefore, we affirm the trial court's denial of this claim.

III. HABEAS CORPUS
Schwab raises three claims in his petition for a writ of habeas corpus. Schwab first contends that, during the trial, Judge Richardson should have recused himself due to his apparent and actual bias and that appellate counsel was ineffective for failing to raise this fundamental error.
Schwab's first habeas claim is procedurally barred as it was raised and rejected in our discussion of Schwab's rule 3.850 appeal. See Parker v. Dugger, 550 So.2d 459, 460 (Fla.1989) ("[H]abeas corpus petitions are not to be used for additional appeals on questions which could have been ... or were raised on appeal or in a rule 3.850 motion, or on matters that were not objected to at trial."). In addition, no motion to recuse Judge Richardson was ever made. Appellate counsel cannot be deemed ineffective for failing to raise an issue that was not pursued or objected to at trial. See Ventura v. State, 794 So.2d 553 (Fla.2001) (appellate counsel cannot be deemed ineffective for failing to raise unpreserved issues).
We also reject Schwab's claim that the alleged judicial bias constitutes fundamental error. As we discussed in our review of Schwab's 3.850 motion appeal, Schwab expressly waived his right to file a motion to recuse Judge Richardson on the basis of the prosecutors' filed affidavits at the July 3, 1991, judicial bias hearing. Likewise, Schwab's claim that Judge Richardson demonstrated his actual bias throughout the trial is also without merit. Schwab's alternative judicial bias claims are merely based on rulings adverse to Schwab and are thus legally insufficient to warrant Judge Richardson's disqualification. See Patton, 784 So.2d at 391; Rivera, 717 So.2d at 481-82.
In his second claim, Schwab argues that appellate counsel was ineffective for failing to ensure that Schwab's direct appeal was based on a complete, accurate, and reliable record. The basis of Schwab's claim is that there are five omissions in the record which deprived him of a direct appeal based on a complete, accurate, and reliable record. Specifically, these omissions are that: (1) the July 3, 1991, judicial bias hearing was not transcribed for direct appeal; (2) a document entitled "State's Questions for In Camera Inquiry," designed to ensure that Schwab was informed on the content of the prosecutors' affidavits, was not included in the direct appeal record; (3) and (4) portions of the two videotapes of two mental health experts' opinions were not transcribed for direct appeal; and (5) a videotape of Schwab that was presented was also not transcribed for direct appeal.
We find that Schwab's second ineffective assistance of appellate counsel claim is without merit. The videotapes that were not transcribed were admitted into evidence and were available for review on direct appeal. We find Schwab has not demonstrated any prejudice resulting from not including in the record a transcript of the portions of the videotapes heard by *415 Judge Richardson. As to the failure to include a copy of the State's Questions for In Camera Inquiry and a transcript of the July 3, 1991, judicial bias hearing, Schwab cannot show that he was prejudiced by such omissions. At the July 3, 1991, judicial bias hearing, Schwab stated under oath that he had read the prosecutors' affidavits and, after discussion with his attorneys, understood that the failure to file a motion to disqualify would constitute waiver. Therefore, we find that the absence of the State's questions and a transcript of this hearing in the direct appeal record did not result in a possibility of a different outcome in these proceedings. Eutzy, 536 So.2d at 1015 ("[A] court need not determine whether counsel's performance was deficient before examining whether the alleged deficiency was prejudicial."). Appellate counsel cannot be found ineffective for not raising on appeal an issue with little or no merit. See Rutherford v. Moore, 774 So.2d 637, 643 (Fla. 2000).
Schwab's third habeas claim is that he is incompetent to be executed. We agree with Schwab's concession that this claim is not yet ripe and thus is without merit. See Mann v. Moore, 794 So.2d 595, 602 (Fla.2001); Hall v. Moore, 792 So.2d 447, 450 (Fla.2001).

IV. CONCLUSION
Accordingly, we affirm the trial court's denial of Schwab's 3.850 motion and deny the petition for habeas corpus.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, LEWIS, and QUINCE, JJ., concur.
ANSTEAD and PARIENTE, JJ., concur in result only.
NOTES
[1] In aggravation, Judge Richardson found that Schwab had been previously convicted of a violent felony, that the murder was committed while Schwab was engaged in the commission of a kidnaping and a sexual battery, and that the murder was especially heinous, atrocious, or cruel (HAC). Judge Richardson "considered the statutory mitigators and forty items of alleged nonstatutory mitigation, but found little in the tendered material actually to be of a mitigating nature or to have been established by the record." Schwab, 636 So.2d at 7.
[2] Huff v. State, 622 So.2d 982 (Fla.1993).
[3] Schwab's eleven claims are: (1) the trial judge should have recused himself due to his apparent bias; (2) the trial judge was actually biased; (3) Schwab did not knowingly, intelligently, and voluntarily waive his right to a jury; (4) trial counsel was ineffective during the guilt phase; (5) trial counsel was ineffective during the penalty phase; (6) the trial judge relied on facts outside the record, namely, Judge Richardson's experience on the criminal bench, in finding that as a child Schwab was not raped by his neighbor; (7) Schwab's death sentence is disproportionate; (8) the prior violent felony aggravator should be struck, as the predicate sexual battery conviction was obtained through an involuntary guilty plea; (9) the intent to torture element of the HAC aggravator was not proven beyond a reasonable doubt; (10) the murder during the course of an enumerated felony aggravator is an unconstitutional automatic aggravating circumstance; (11) section 921.141, Florida Statutes (1989), is unconstitutionally vague and overbroad.
[4] Claims which were or could have been raised on direct appeal are procedurally barred in a rule 3.850 motion. See, e.g., Roberts v. State, 568 So.2d 1255, 1257-58 (Fla. 1990). Claims seven and nine are procedurally barred as they were raised on direct appeal. See Schwab, 636 So.2d at 7-8. Claims three, six, eight, ten, and eleven are procedurally barred as they should have been raised on direct appeal. See Lopez v. Singletary, 634 So.2d 1054, 1056 (Fla.1993) ("Postconviction motions are not to be used as second appeals.").
[5] Claims six, eight, nine, ten, and eleven are also without merit. Claim six, that Judge Richardson relied on his experience on the criminal bench in making a finding adverse to Schwab, is without merit as Judge Richardson's finding was based on properly admitted evidence. Moreover, a trial judge's judicial experience cannot reasonably be separated from his decision-making process. Claim eight, that Schwab's prior violent felony aggravator should be struck, is without merit as no evidence was presented that the predicate sexual battery conviction was invalid. Claim nine, that HAC must be struck because HAC only applies in instances in which the defendant intended to commit a heinous, atrocious, or cruel murder, is without merit as the "intention of the killer to inflict pain on the victim is not a necessary element of the aggravator." Guzman v. State, 721 So.2d 1155, 1160 (Fla.1998); see also Hitchcock v. State, 755 So.2d 638, 644 (Fla.2000). Claim ten, that a murder committed during the course of another violent felony cannot automatically support the death penalty, is without merit as this aggravator was supported by Schwab's contemporaneous kidnaping and sexual battery convictions. See Schwab, 636 So.2d at 7-8; see also Atwater v. State, 788 So.2d 223, 227 (Fla.2001) (citing Hudson v. State, 708 So.2d 256, 262 (Fla.1998) (finding murder during commission of enumerated felony aggravator not unconstitutional automatic aggravator)). Claim eleven, that section 921.141 is unconstitutional, is without merit because the statute withstands a challenge of vagueness and overbreadth. See Ragsdale v. State, 609 So.2d 10 (Fla.1992).
[6] Rule 2.160 became effective on January 1, 1993. Prior to that date, judicial recusal was controlled by Florida Rule of Criminal Procedure 3.230. See Rogers v. State, 630 So.2d 513, 515 n. 4 (noting that rule 3.230 was repealed and replaced by Florida Rule of Judicial Administration 2.160, effective January 1, 1993). Both rules, however, required that a motion to disqualify be made within ten days after discovery of the facts forming the basis for the motion.
[7] Canon 3 E(1) states: "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned...." At the time of Schwab's original trial, Canon 3(C) was in effect. Canon 3(C) employed practically the same language.
[8] This list is illustrative and not exhaustive.
[9] This argument is the same as Schwab's eighth claim, as set out in footnote three and rejected in footnote five, except that, here, Schwab's argument is couched as an ineffective assistance of counsel claim.