830 So.2d 109 (2002)
John J. SKRANDEL, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-860.
District Court of Appeal of Florida, Fourth District.
May 29, 2002.
Opinion on Denial of Rehearing November 13, 2002.
*110 Carey Haughwout, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Donna Hoffmann and Judy Hyman, Assistant Attorneys General, West Palm Beach, for appellee.
STEVENSON, J.
The appellant, John J. Skrandel, was tried by jury and convicted of aggravated assault with a firearm. In this appeal, Skrandel argues that the trial court erred in denying his post-trial motion for new trial which was based on the alleged ineffective assistance of trial counsel. We affirm.
The Evidence at Trial
On March 21, 1999, at Osborne Park in Palm Beach County, John Skrandel and Michael Adams got into a heated argument over who would use a particular batting cage. During the argument, Skrandel retrieved a gun from his equipment bag and aimed the laser sight on Adams' forehead. For this, Skrandel was charged with and convicted of aggravated assault with a firearm.
The State's theory was that Skrandel had simply "lost it" and overreacted. To this end, Adams testified that when he called Mary Cramer, the park supervisor, *111 for support, Skrandel came at him with a bat. Adams grabbed the bat and threw it to the side, taking a couple of steps toward Skrandel. Then, Randy Huseby, one of Adams' assistant coaches, came over to the cage, told Skrandel to use another cage, lifted the net, and grabbed the bat from underneath to remove it from the situation. According to Huseby, his actions were prompted by Skrandel's increasing agitation and his remarking "where's the bat, where's the f-ing bat." Huseby testified that he threw the bat away, intending it to land near the playground. Instead, the bat hit the roof of a nearby building and made a loud noise. Adams stated that Skrandel yelled "don't throw the bat at my son" and "I'm going to blow your f-ing brains out." Huseby indicated that Skrandel exclaimed "you're trying to kill my son" and "I'm going to kill you." Despite Skrandel's reaction, both Mary Cramer and Huseby testified that the bat did not come near Skrandel's son.
Skrandel then grabbed his equipment bag and began rummaging through it. Adams testified that, at the time, Skrandel was moving backwards and he, Adams, was moving forward, intending to block the balls that he expected Skrandel to take from the bag and throw at him. Skrandel instead pulled a gun out of the bag and aimed it at Adams. Adams described Skrandel as "shaking a little bit" and saying that he was tired of being pushed around and something about his son.
Skrandel did not take the witness stand, but defended through counsel's argument that he acted in self defense, fearing that the two men were a threat to him and his son. As evidence of Skrandel's justified fear, defense counsel elicited testimony from Adams that Huseby was 6'6" and about 300 pounds, but Skrandel was only 5'9" and about 155 pounds. And, in an effort to discredit Adams' and Huseby's repeated assertions that Skrandel was never threatened, defense counsel cross-examined Joseph Staats, whose son played on the team that Adams coached and who saw Skrandel point the gun at Adams, forcing him to admit that he told police that he heard Skrandel screaming "get away from me, get back." Defense counsel also challenged Adams' credibility by eliciting testimony that he called Dr. Carl Panzarella, who witnessed the afternoon's events, to see what he thought and what he saw and had spoken to Cramer as well.
Skrandel's Motion for New Trial & Ineffective Assistance of Counsel Claim
Immediately following his conviction, Skrandel discharged his trial counsel and filed a pro se motion for new trial, arguing that his attorney had provided ineffective assistance by failing to call Dr. Panzarella, Skrandel's son, Skrandel's ex-wife, and Skrandel himself to testify in support of his claim of self defense. At the evidentiary hearing, Dr. Panzarella testified (1) that he had spoken to Skrandel that same day and asked him to switch cages and that Skrandel had agreed to do so without incident; (2) that when Huseby threw the bat Skrandel began screaming, but he was of the opinion that Skrandel's child was never in any danger of being hit; and (3) that prior to Skrandel pulling out the gun, Huseby and Adams were moving toward Skrandel.
Skrandel's trial attorney, Gordon Richstone, acknowledged that Panzarella's testimony was favorable to his client. He explained, however, that he elected not to call Panzarella as a witness at trial because he believed that the substance of Panzarella's favorable testimony had already been brought out and to call him would risk his unfavorable testimony being introduced as welli.e., Panzarella had characterized Adams and Skrandel as "two maniacs" and would have been one more *112 witness testifying that Skrandel had pointed a gun at Adams.
Skrandel's son and ex-wife testified at the hearing as well. Skrandel's son stated that the bat had come within two feet of him and that he would have been hit had his dad not yelled for him to move. Attorney Richstone stated that he had spoken to the child, but had decided not to call him as a witness because he was too young and his memory was bad. Moreover, the State diminished the significance of the child's testimony by pointing out deposition testimony where the child indicated that he had his eyes closed during the incident. As for Skrandel's ex-wife, there was deposition testimony wherein she stated that when she picked her son up from the park that afternoon, he told her "somebody was trying to hurt or kill daddy." The State, however, pointed to testimony from the same deposition suggesting that their son had not made such a remark and that any statements the child had made were only after she calmed him down.
Finally, Skrandel called himself as a witness. Skrandel testified that if he had been called as a witness at trial, he would have stated that, during his argument with Adams, Huseby came into the batting cage, walked between them and picked up his son's bat. Skrandel responded by stating "that's our bat" and reaching out for it. Huseby walked out of the cage, brought up his arm fast, and threw the bat. Skrandel insisted that Huseby was so close to his son that he feared the child would get hit and yelled for him to move. Then, he picked up his bag containing his gun. After he retrieved the bag and turned back around, he saw that Huseby had thrown the bat at his son and that his son was moving backwards with his hands in the air. According to Skrandel, the bat came down right in front of his son's head. Skrandel explained that he then tried to get to his son, who was screaming, and that Adams took a step toward him. Skrandel stated that he backed away from Adams until he was cornered, telling Adams to get away from him and his son. Then, when Adams was about two feet away, Skrandel pulled out his gun.
To prevail in his claim of ineffective assistance of counsel, Skrandel was required to establish that
(1) "counsel's performance was deficient" in that "counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment"; and
(2) "the deficient performance prejudiced the defense" because "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.
Acker v. State, 787 So.2d 77, 82-83 (Fla. 2d DCA), review denied, 800 So.2d 616 (Fla. 2001). The trial judge denied the motion for new trial, finding that the decision not to call Panzarella, Skrandel's ex-wife and son, and Skrandel himself as witnesses fell within the "wide range of professionally competent assistance" and that, in any event, Skrandel had failed to establish the required prejudice.
Strickland's Prejudice Prong
On appeal, Skrandel challenges only his attorney's failure to call Dr. Panzarella as a witness at trial. "The standard of review as to whether counsel's performance was deficient and whether the deficiency prejudiced the defendant are mixed questions of law and fact, requiring de novo review." Acker, 787 So.2d at 83; see also Gilliam v. State, 817 So.2d 768 (Fla.2002). Skrandel's theory of defense was that his actions were prompted by his fear for the safety of himself and his son when Huseby threw the bat. To satisfy Strickland's prejudice prong, "a defendant *113 must show that, but for the error, there is a reasonable probability that the outcome would have been different." Ridenour v. State, 768 So.2d 480, 481 (Fla. 2d DCA 2000). And, decisions regarding whether to call a particular witness at trial are "ordinarily a matter of trial strategy and personal judgment on the part of defense counsel." Roth v. State, 479 So.2d 848, 849 (Fla. 3d DCA 1985). "[O]nly when the decision made is so irresponsible as to constitute inadequate representation does such a ground constitute a proper collateral attack on the competence of counsel." Id.
With respect to his fear for the safety of his child, we agree with the State's position that Panzarella's testimony could not have furthered such a position and, in fact, would have been detrimental as Panzarella unequivocally testified at the hearing on Skrandel's motion for new trial that Skrandel's son was never in any danger of being hit. Consequently, Skrandel has failed to demonstrate any prejudice in the failure to call Panzarella as a witness for this reason.
In addition to arguing that he acted out of fear for his son, Skrandel also contended that his actions were motivated by his fear for his own safety. The evidence presented at Skrandel's trial was to the effect that while both Adams and Huseby argued with Skrandel, Adams alone came toward Skrandel during the heated argument. If called as a witness, Dr. Panzarella apparently would have testified that prior to Skrandel drawing his gun, both Adams and Huseby, who was admittedly much larger than Skrandel, came at Skrandel. Since Dr. Panzarella would have been the only one to testify that Skrandel pulled his gun only after both Adams and Huseby came at him, we agree that, when considered in isolation, Skrandel's claim that there is a "reasonable probability" that Panzarella's testimony would have affected the outcome of the proceedings appears to have merit. But, Skrandel's own testimony at the evidentiary hearing as to why he reacted the way he did eliminates any claim that his lawyer was deficient in not making the argument that Skrandel's actions were prompted by his fear when both Adams and Huseby came at him in the batting cage.
At the hearing on the motion for new trial, Skrandel testified that Huseby walked out of the batting cage and toward his son before throwing the bat. According to Skrandel, it was Adams coming at him and his fear of Adams that caused him to pull his gun. Since Skrandel himself claimed that his fear was the product of Adams coming at him and that Huseby was no longer in the batting cage, we cannot accept Skrandel's appellate claim that the failure to call Panzarella "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Knowing that his client did not claim that both men came at him at the same time, defense counsel was not deficient in not calling Dr. Panzarella to establish this theory of self-defense, which would have been inconsistent with the testimony of every other eye-witness and inconsistent with the defendant's own version of events.
We have examined the issues presented in this appeal and find no error. Consequently, the judgment and sentence on appeal is AFFIRMED.
POLEN, C.J., and TAYLOR, J., concur.

ON MOTION FOR REHEARING
PER CURIAM.
We deny appellant's motion for rehearing, but write to discuss several issues raised therein.
*114 Following his conviction for aggravated assault with a firearm,[1] John Skrandel filed a motion for new trial asserting, among other things, ineffective assistance of trial counsel. More specifically, Skrandel alleged that his lawyer, Gordon Richstone, was ineffective in failing to call Dr. Carl Panzarella, Skrandel's ex-wife, Skrandel's son, and Skrandel himself in support of his self-defense theory. The trial court rejected Skrandel's contention that his lawyer had provided ineffective assistance of counsel, and Skrandel appealed to this court, arguing only that Richstone had been ineffective for failing to call Dr. Panzarella as his testimony would have confirmed that he acted only out of fear for himself and his son. We affirmed the trial court's ruling. See Skrandel v. State, 27 Fla. L. Weekly D1264 (Fla. 4th DCA May 29, 2002).
First, we rejected Skrandel's contention that Panzarella would have added any support to his claim that he acted in defense of his son as Panzarella unequivocally testified at the hearing on Skrandel's motion for new trial that Skrandel's son was never in any danger. Then, we turned to Skrandel's claim that Panzarella would have supported his theory that he acted in self-defense. The evidence actually presented at Skrandel's trial was that although both Adams and Huseby argued with Skrandel, Adams alone came toward Skrandel during the argument. At the hearing on the motion for new trial, Panzarella testified that, prior to Skrandel drawing his gun, both Adams and Huseby, who was admittedly much larger than Skrandel, came toward Skrandel. Such testimony, we concluded, was sufficient to satisfy Strickland's prejudice prong, i.e., there was a reasonable probability that Panzarella's testimony would have affected the outcome. We found, however, that Skrandel could not satisfy Strickland's first prongthat counsel's performance was deficient.
In reaching this conclusion, we focused on the fact that Panzarella's testimony that both Adams and Huseby came at Skrandel was inconsistent with Skrandel's own testimony at the hearing on the motion for new trial:
At the hearing on the motion for new trial, Skrandel testified that Huseby walked out of the batting cage and toward his son before throwing the bat. According to Skrandel, it was Adams coming at him and his fear of Adams that caused him to pull his gun. Since Skrandel himself claimed that his fear was the product of Adams coming at him and that Huseby was no longer in the batting cage, we cannot accept Skrandel's appellate claim that the failure to call Panzarella "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Knowing that his client did not claim that both men came at him at the same time, defense counsel was not deficient in not calling Dr. Panzarella to establish this theory of self-defense, which would have been inconsistent with the testimony of every other eye-witness and inconsistent with the defendant's own version of events.
Skrandel, 830 So.2d at 113. In his motion for rehearing, Skrandel challenges our finding that he could not satisfy Strickland's deficiency prong and argues that our decision was incorrect because (1) it is improper for a court to offer reasons or *115 justifications for counsel's decisions that counsel himself did not offer and (2) that, even if this court were permitted to create a justification for defense counsel's decisions, defense counsel's failure to call either Panzarella or Skrandel himself was still not objectively reasonable. We write this opinion on rehearing to address these issues.
First, we readily admit that Attorney Richstone did not point to the discrepancy between Skrandel's version of events and Panzarella's version in support of his decision not to call Panzarella as a witness at trial. In assessing counsel's performance for purposes of an ineffective assistance of counsel claim, however, the standard is an objective one and not a subjective one. See Strickland, 466 U.S. at 688, 104 S.Ct. 2052; see also Schwab v. State, 814 So.2d 402 (Fla.2002). Thus, the focus is on what a reasonably competent lawyer, standing in the defendant's lawyer's shoes, would have been expected to do.
"Courts must `indulge [the] strong presumption' that counsel's performance was reasonable and that counsel `made all significant decisions in the exercise of reasonable professional judgment.'" Id. [Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir.2000)(en banc) ](quoting Strickland, 466 U.S. at 689-90, 104 S.Ct. at 2065-66). Therefore, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken `might be considered sound trial strategy.'" Id. (quoting Darden v. Wainwright, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)).
If the record is incomplete or unclear about counsel's actions, then it is presumed that counsel exercised reasonable professional judgment. See id. at 1314-15 n. 15. Thus, the presumption afforded counsel's performance "is not... that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not to do a specific act." Id. Rather, the presumption is "that what the particular defense lawyer did at trialfor example, what witnesses he presented or did not presentwere acts that some reasonable lawyer might do." Id. (emphasis added).
Moreover, "[t]he reasonableness of a counsel's performance is an objective inquiry." Id. at 1315. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id. To uphold a lawyer's strategy, a court "need not attempt to divine the lawyer's mental processes underlying the strategy." Id. at 1315 n. 16.
Putman v. Head, 268 F.3d 1223, 1243-44 (11th Cir.2001), cert. denied, ___ U.S.___, 123 S.Ct. 278, 154 L.Ed.2d 119 (2002) (bold emphasis added). We believe that our finding in the original opinion that Skrandel's attorney did not render deficient performance in failing to call Dr. Panzarella, given the inconsistency between Skrandel's testimony that Adams alone came at him and Panzarella's testimony that both Adams and Huseby came at him, is consistent with the above-cited principles.
In his motion for rehearing, Skrandel has directed our attention to language from the Seventh Circuit's opinion in Harris v. Reed, 894 F.2d 871, 878 (7th Cir. 1990). In that case, the court found that defense counsel's decision not to put on any witnesses in support of a viable self-defense theory fell outside the range of professionally competent assistance and reversed the defendant's conviction. In reaching this decision, the court wrote that *116 "[j]ust as a reviewing court should not second guess the strategic decisions of counsel with the benefit of hindsight, it should also not construct strategic defenses which counsel does not offer." Id. Skrandel would have us interpret this language as requiring a court to ignore an obvious justification for an attorney's trial decision because the lawyer did not offer the particular explanation. We believe that this interpretation is inconsistent with the objective standard of reasonableness. Regardless of what was going on in Attorney Richstone's mind at the time, the question is would any competent attorney do what he did (fail to call Panzarella). Under the circumstances, we believe that the answer to that question is "yes."
This brings us to the second argument advanced in Skrandel's motion for rehearing. Here, Skrandel contends that even if it is permissible for a court to create a justification for defense counsel's actions, it was not objectively reasonable for Richstone to call neither Panzarella nor Skrandel at trial. In his motion, Skrandel conceded that if he had testified at trial, then defense counsel's decision not to call Dr. Panzarella would probably have been objectively reasonable since their versions of events as to why Skrandel pulled a gun on Adams were different, i.e., Panzarella would have said that Adams and Huseby came at Skrandel while Skrandel himself would have testified that Adams alone came at him in the batting cage. According to Skrandel, however, since defense counsel advised him not to testify at trial, it was unreasonable for him to also fail to call Dr. Panzarella. A review of the record indicates that this "either or" argument was never made to the trial court.[2] Instead, while before the trial court, Skrandel argued that his lawyer was ineffective for failing to call Panzarella, Skrandel's ex-wife, Skrandel's son, and Skrandel himself. In view of the evidence presented, it is unlikely that the outcome would have been different had Panzarella testified that two men came at Skrandel, and Skrandel himself testified that Adams alone came at him.
Accordingly, the conviction is AFFIRMED.
POLEN, C.J., STEVENSON and TAYLOR, JJ., concur.
NOTES
[1] In our original opinion, we indicated that Skrandel was tried by jury. See Skrandel v. State, 830 So.2d 109 (Fla. 4th DCA 2002). As Skrandel points out in his motion for rehearing, his conviction followed a bench trial.
[2] The transcript of the proceedings below indicates that the trial judge recognized the discrepancy between Skrandel's own testimony and Panzarella's and even questioned Skranndel about it. Skrandel, However, never retreated from his argument that his lawyer had been ineffective for failing to call Panzarella, Skrandel's ex-wife, Skrandel's son, and Skrandel himself.