BENTON, J.
George Henry Devaney, III, appeals the denial of the amended motion for postcon-viction relief he filed pursuant to Fla. R.Crim. P. 3.850 (2001), seeking to set aside convictions for “DUI Manslaughter, *86 DUI with serious bodily injury, Leaving the scene of an accident involving death, [and] Leaving the scene of an accident involving serious bodily injury.” We reverse and remand.
The motion alleged that his trial counsel provided ineffective assistance in failing to interview and then in failing to call three exculpatory witnesses whose names he had furnished them. Evidence adduced on the motion established that the failure to call these'witnesses was objectively unreasonable, based on prevailing professional standards, and that this failure to meet minimum constitutional requirements undermines confidence in the correctness of the result at trial. See Schwab v. State, 814 So.2d 402, 408 (Fla.2002) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).
The central question at trial was who was driving when the fatal accident occurred on January 4, 1997. Mr. Devaney’s truck was involved in two accidents early that morning. He conceded that he was driving at the time of the second accident, but contended (and still contends) that one Mike Milling was driving at the time of the first accident, the accident that gave rise to criminal charges. Mr. Milling testified that Mr. Devaney was driving at the time of the first accident but, on cross-examination as to that accident, Mr. Milling said, “I know what I hit.” Two state’s witnesses, Lamart McClain and William McGhee, testified that, while they were in a holding cell (along with perhaps seven others) on the day Mr. Devaney’s jury was chosen, Mr. Devaney said that he was driving at the time of the first accident.[1]
On the second day of trial, after the prosecution alerted the defense to its intention to call Messrs. McClain and McGhee, the trial court allowed defense counsel to depose them that night. When proceedings resumed the following morning, a Friday, a lawyer who represented Mr. Devaney was addressing the court about the two newly disclosed state’s witnesses he had deposed the night before, when he said:
I just got a note from my client about people in the jail that he is aware of that can refute the allegations that we heard of last night. The first I knew about it is right now, when Mr. Devaney just gave me this information.
I mean, the court recognizes that I am ill, have been doing the best I could all week. I was very ill this morning, but I — the reason why I’m here, and probably shouldn’t be here, is I didn’t want the court to think for one moment that I was using my illness to further perpetuate my request of the court last night that we be given additional time to do what we could to investigate these two witnesses, so I am here. I can stay here and I plan to be here today.
Nevertheless, we are — we were in court last night. Talk about being on the horns of a dilemma, we are in a mess here as to what to do about defending our client’s rights with regard to these two new witnesses.
.... I’m not attributing any fault to the state, but due to my condition, I’ve not been able to stay on top of things this week.... And I probably could have put a lot of time in last night, and I *87 just was too sick to do that, and I was sick again this morning.
The trial court responded to defense counsel by discussing the possibility that numerous unlisted defense witnesses would testify to rebut the testimony of the two unlisted state’s witnesses:
[I]f you come in with seven witnesses ... I’m going to order the state to have an opportunity to depose them, we’re going to keep going. So we’re all in the same boat in this thing, in terms of what’s fair for one is fair for the other.
... And if you have rebuttal witnesses or something, obviously, you’re going to have.... If you tell me you’re ill, you’re ill.
[[Image here]]
... Clearly, you have the weekend. How effective you can be over the weekend, I have no idea. That’s entirely a decision you and your client and [co-counsel] have to make, given your condition .... [T]his case just seems to be growing as opposed to diminishing. And I don’t intend to keep this jury here ad infinitum....
The note Mr. Devaney gave his lawyer had five names on it, including those of Chili-migras Constandinos, Dewayne McNair and Donald Anderson (who was listed as Scott Anderson in the motion).[2] The latter two testified at the evidentiary hearing below in ways that might well have led the jury to reject the testimony of Messrs. McClain and McGhee, and acquit Mr. De-vaney, if defense counsel had called Messrs. McNair and Anderson at the trial.
When asked at the evidentiary hearing about the note Mr. Devaney had given him at the trial, the lawyer quoted above testified:
I do not have a recollection of this but I certainly do not refute that, you know, the transcript indicates it is me addressing Judge Morris, and that the transcript also indicates that I just got a note from my client about people at the jail that he is aware of that can refute the allegations that we heard of last night.
Mrs. Zedalis, I do not remember this.
[[Image here]]
I apologize for that, and I apologize to my client, I don’t remember it....
Nor did defense counsel have any recollection of visiting the jail to interview anybody Mr. Devaney had named in the note.
The order we have for review denying the motion was drawn by counsel at the trial court’s direction, but only after the judge who heard the motion ruled from the bench, stating reasons:
[TJhese issues ... are, from a legal perspective, not that difficult.... I find that both of the state’s witnesses who testified for purposes of impeachment [at the original trial] were lacking in credibility, I find that the two witnesses presented today, although convicted felons, have no apparent motive to lie today, and I have no reason to question their credibility....
The issue is has the defense carried the burden of establishing that the defense counsel made such errors that they can be determined by this court to have been ineffective.... [T]here was no way the [trial] judge was going to give them additional time to investigate or develop further defense. Whether or *88 not that created an issue on appeal, ... it’s very clear that the defense counsel took every reasonable step during the course of the trial to present a full and adequate defense to Mr. Devaney and there is nothing in the record that would lead me to the conclusion that he was not provided effective assistance of counsel at that trial.
We defer to the motion judge’s credibility determinations with regard to witnesses the motion judge actually saw and heard testify, but no substantial, competent evidence supports the motion judge’s overall view of the case.
At the original trial, the trial judge gave defense counsel the entire weekend to interview anybody they chose. Assuming that this would yield several defense witnesses, the trial judge outlined a discovery procedure designed to avoid prejudice to the state that last-minute defense witnesses might otherwise cause. But there was no evidence that defense counsel interviewed anybody at the jail over the weekend or at any time before the trial concluded. None of the potential trial witnesses was called. Defense counsel’s testimony at the postconviction evidentiary hearing did not reveal any tactical or strategic reason for failing to interview or failing to call the exculpatory witnesses. Cf. Johnson v. State, 769 So.2d 990, 1001 (Fla.2000) (“Counsel’s strategic decisions will not be second-guessed on collateral attack.”); Rose v. State, 675 So.2d 567, 570 (Fla.1996) (“[I]t is apparent that there was a reasoned basis for counsel’s decision.”).
In Schwab v. State, 814 So.2d 402 (Fla.2002), our supreme court dissected the Strickland test for analyzing claims of ineffective assistance of counsel, as follows:
In Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth a two-prong test to be applied by courts in analyzing claims of ineffective assistance of counsel. See Cherry v. State, 781 So.2d 1040, 1048 (Fla.2000). As to the first prong, the Supreme Court stated that “the defendant must show that counsel’s representation fell below an objective standard of reasonableness” based on “prevailing professional norms.” Strickland, 466 U.S. at 688, 104 S.Ct. 2052. Under the second prong of the test, “[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052. The Supreme Court defined “reasonable probability” as “a probability sufficient to undermine confidence in the outcome.” Id.
Schwab, 814 So.2d at 408. “[T]he failure to call witnesses can constitute ineffective assistance of counsel if the witnesses may have been able to cast doubt on the defendant’s guilt....” Marrow v. State, 715 So.2d 1075, 1075 (Fla. 1st DCA 1998) (quoting Jackson v. State, 711 So.2d 1371, 1372, (Fla. 4th DCA 1998)).
In the present case, the jury’s verdict hinged on their finding that Mr. Devaney, not Mr. Milling, was driving at the time of the first crash. On this record, there is a reasonable probability that the exculpatory witnesses’ testimony — by directly contradicting the testimony that Mr. Devaney said that he was driving at the time of the first crash and by otherwise calling the credibility of Mr. McGhee into question— would have led the jury to return a verdict of not guilty.
Reversed and remanded.
ALLEN and DAVIS, JJ., concur.

. Mr. Devaney conceded that he had a conversation in the holding cell with Mr. McClain, but said that, when Mr. McClain said that Mr. Milling was going to testify that Mr. Devaney had been driving, he responded, "Well, you go back ... and you tell Mike Milling why did he run to Ohio whenever my lawyers wanted to take his deposition for the case.”

. Although the trial court did not make a finding as to the number or identity of the witnesses listed, Mr. Devaney's uncontrovert-ed testimony at the evidentiary hearing was that he had listed five names, including those of Messrs. Constandinos, McNair and Anderson.