PER CURIAM.
,We reverse the defendant’s conviction for a violation of Richardson v. State, 246 So.2d 771 (Fla.1971). Defendant was charged with and convicted of (1) grand theft and (2) perjury not in an official proceeding.
Defendant Joubert was a bus driver for Miami-Dade County Transportation. In 1996, a bus which he was operating was impacted from the rear, causing the defendant’s right shoulder, elbow and wrist to collide with the steering wheel. He underwent an operation to correct a carpal tunnel problem, continued to receive shots of cortisone, and continued to work. In May 2000, Joubert was required to drive a bus which had lost its power steering, and in manually operating the steering wheel his right shoulder was aggravated. Following the aggravation of the injury he received an MRI scan which revealed:
—a complete tear of the super spinatus tendon with retraction of a torn tendon edge to the level of the superior glenoid rim — The size of this tear appears massive approaching four cm sq.
He was also diagnosed with degenerative arthritis in his shoulder joint. The treating physician further diagnosed him with a rotator cuff pathology and found that the *1057 second problem was definitely an aggravation of the original injury.
Charges were ultimately filed against Joubert in connection with his worker’s compensation claim. The State’s position was that Miami-Dade Risk Management surveillance of Joubert revealed that he had 'exaggerated his claims. Risk Management had employed a private contractor to do the surveillance, and make video tapes. Two video tapes were produced at trial. The first video tape contains surveillance conducted on June 9. In that video defendant was identified rolling six oil drums onto a flatbed truck. In a second video taken on June 19, the same date that Joubert had an appointment with the State’s expert orthopedist, he was seen dragging 6 to 10 rubber garbage cans to a dumpster in order to empty them.
Dr. Easterling, the State’s medical expert, had examined Joubert on June 19, and noted Joubert’s complaints including the inability to raise his right arm over his head, and to use it in certain other ways. At his pretrial deposition Dr. Easterling testified he had seen the June 9 video and that it was not inconsistent with Joubert’s complaints. He said that the explanation for defendant’s lifting items over his head and shoulders represented the fact that patients with his condition sometimes had “good and bad days.” However, when shown the June 19th video for the first time on the day of trial, Dr. Easterling said that it was inconsistent with the defendant’s claims, and had he been aware of that activity taking place on the same day he had examined Joubert, he would have sent him back to work rather than recommending that he be placed on light duty.
The State’s expert was allowed to present the above testimony before the jury, and there was no objection from defendant. In fact, it did not become clear until the doctor’s cross-examination that there were in fact two videos, the second of which, the June 19 video, was shown to the doctor on the morning of trial. The second video had never been shown to defendant, who only learned of it for the first time during the doctor’s cross-examination.
At the conclusion of the doctor’s testimony, defense counsel brought up the Richardson violation. The state attorney readily admitted that the second video tape had inadvertently not been produced to the defendant. At one point the trial court stated:
At this time the court concedes there is a discovery violation, that it was inadvertent, not willful and for prejudice finds it to be slightly more than trivial and alot less than substantial.
The court then proposed that it allow a continuance for the defendant to procure his own expert physician. The defense counsel then said he was not certain that a week would be sufficient and moved the court to grant a mistrial, which motion was denied. The court then examined the June 9 video and the June 19, to compare the two. After his examination the trial judge stated:
After viewing this, it is now apparent, that if any prejudice to the defendant from the failure to view the June 19 tape it was minuscule. There is no substantial difference between any of the tapes and the activity. If anything it appears that on the June 19, it shows more use on the part of the defendant than what appeared on the June 19. (The trial court obviously misspoke itself and meant that he saw more activity on June 9 than on the 19th.)
In any event, the trial judge effectively rescinded his order granting a continuance to the defendant.
The trial court obviously was of the view that substantive prejudice was the key test in determining whether there was a Richardson violation. In so holding the able trial judge was incorrect. In *1058 State v. Schopp, 653 So.2d 1016, 1020 (Fla.1995) our Supreme Court discussed the importance of evaluating procedural prejudice resulting from violations of the Richardson rule:
In determining whether a Richardson violation is harmless, the appellate court must consider whether there is a reasonable possibility that the discovery violation procedurally prejudiced the defendant. As used in this context, the defense is procedurally prejudiced if there is a reasonable possibility that the defendant’s trial preparation or strategy would have been materially different had the violation not occurred. Trial preparation or strategy should be considered materially different if it reasonably could have benefitted the defendant. In making this determination every conceivable course of action must be considered. If the reviewing court finds there is a reasonable possibility that the discovery violation prejudiced the defendant or if the record is insufficient to determine the defense was not materially affected, the error must be considered harmful. In other words, only if the appellate court can say beyond a reasonable doubt that the defendant was not procedurally prejudiced by the discovery violation can the error be considered harmless.
Here defense counsel recognized that the change in the physician’s testimony was devastating to its defense and articulated that defendant would have opted for the plea offered by the State had the second video been properly produced.
For these reasons we have no alternative but to reverse the defendant’s conviction and remand for a new trial.
FLETCHER, J„ and NESBITT, Senior Judge, concur.