# Third District Court of Appeal

## State of Florida

Opinion filed April 13, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-1540
Lower Tribunal No. 12-9493
_____


**Sandor Eduardo Guillen,**
Appellant,

vs.

**The State of Florida,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Ellen Sue Venzer, Judge.

Law Offices of Matthew Troccoli, P.A., and Matthew J. Troccoli, for appellant.

Pamela Jo Bondi, Attorney General, and Marlon J. Weiss, Assistant Attorney General, for appellee.


Before ROTHENBERG, LAGOA, and SALTER, JJ.

ROTHENBERG, J.

Sandor Eduardo Guillen ("the defendant") appeals his criminal convictions on the grounds that the trial court abused its discretion by: (1) denying his motion for a continuance; (2) denying his motion to preclude the State from calling William Wright ("Wright") as an expert witness; and (3) permitting the State to introduce photographs of the deceased victim's injuries.[1] Because the defendant failed to preserve the first issue for appellate review and the trial court did not abuse its discretion on the remaining two appellate issues, we affirm.

## BACKGROUND

In 2012, the defendant was speeding on a busway in his Land Rover while intoxicated when his vehicle slammed into a minivan carrying Kaely Camacho ("the victim") and her father and sister. After the collision, rather than rendering aid, the defendant fled the scene and was ultimately arrested. The victim later died from her injuries.

The defendant was ultimately charged with three first degree felonies: (1) DUI manslaughter with failure to render aid; (2) vehicular homicide with failure to render aid; and (3) leaving the scene of a crash involving death. The defendant pled not guilty.

---

[1] The defendant also appeals the trial court's denial of his motion for new trial. However, we find that the defendant's arguments are without merit, and the trial court did not abuse its discretion. We therefore affirm the denial.

The relevant procedural history is as follows. Approximately ten days prior to the scheduled February 25, 2014 trial, a new prosecutor was assigned to prosecute the case. On February 17, 2014, after reviewing the file, the newly assigned prosecutor listed Wright as an expert witness, but indicated to defense counsel that she would probably not call Wright at trial. Thereafter, the State moved for a sixty-day continuance because, among other reasons, the State needed time to meet with Wright and to prepare for trial, and defense counsel needed time to depose Wright. On February 19, 2014, the trial court heard the State's motion for a continuance. At the hearing, the defendant objected to the listing of Wright as a witness, but stated that if the trial court permitted the State to list Wright as a witness, the defendant would then join with the State in requesting a continuance. The trial court denied the joint motion for a continuance, stating that there was sufficient time before trial to conduct the necessary depositions and prepare for trial.

The State deposed the defendant's accident reconstruction expert witness, Miles Moss ("Moss"), on February 21, 2014, at which time the State learned that Moss had revised his vehicular speed calculations from what he had previously provided in his report. As a result, the State immediately informed the defendant that it intended to call Wright as a witness at the trial, and the defendant deposed Wright.

3

On February 24, 2014, after deposing Wright, the defendant moved to preclude the State from calling Wright as an expert witness based on the late disclosure of Wright as a witness. The State responded that the late disclosure of Wright as a witness was caused, in part, by the defendant's failure to disclose that the defendant's expert, Moss, had revised his vehicular speed calculations, and that these revisions required the opinion of a more experienced expert, like Wright, to provide rebuttal testimony. The trial court denied the defendant's motion to preclude Wright from testifying as a witness.

Prior to the start of trial on February 25, 2014, the defendant asked the trial court to note his continuing objection to Wright being called as a witness. In response, the trial court conducted a Richardson[2] hearing to determine whether the State had committed a discovery violation and if so whether Wright should be excluded as a witness. The State explained that it only decided to call Wright after deposing the defendant's expert, Moss, and learning that although Moss had changed his testimony several weeks earlier, no one had disclosed this fact to the State. Although the trial court found insufficient procedural prejudice to warrant exclusion of Wright as a witness, the trial court reset opening statements to the following day to allow defense counsel to consult with his own expert regarding

---

[2] Richardson v. State, 246 So. 2d 771 (Fla. 1971).

Wright's expected testimony, and the trial court further ordered the State to make its experts available to defense counsel.

The defendant also objected before and at trial to the admission of certain photographs of the victim's injuries, arguing that they were unfairly prejudicial. The trial court overruled the objections, reasoning that the probative value of the objected-to photographs was not outweighed by their prejudicial effect.

After a four-day jury trial, the defendant was convicted on all three counts,[3] and after his motion for a new trial was denied, he filed the instant appeal.

## ANALYSIS

### I. Denial of Defendant's Motion for a Continuance

First, we find that the defendant failed to preserve for appellate review the denial of his motion for a continuance. Although defense counsel renewed his motion to exclude Wright as a witness, he did not seek a continuance after the trial court denied his motion to exclude Wright as a witness, and, in fact, announced that he was ready for trial.

The record reflects that after the trial court denied the defendant's motion to exclude Wright, the trial court specifically asked the defendant if he was ready for trial.

---

[3] Pending this appeal, the trial court vacated all but the DUI manslaughter conviction.

5

[The State]: It doesn't sound as if [defense counsel] is asking for additional time. I don't know if he is or not.

[Defense counsel]: I have - other than not waiving the objection to the expert's [sic] post Perez, I've made the best of the Court's order in taking the deposition and done my best to get ready.

The Court: Are you prepared to go to trial, sir?

[Defense counsel]: Yes.

Because the defendant failed to renew his motion for a continuance at the start of the trial and defense counsel actually stated that he was prepared to go to trial, the defendant failed to preserve for appellate review the trial court's denial of his motion for a continuance. See McCray v. State, 369 So. 2d 111, 112 (Fla. 1st DCA 1979) ("[A]ppellant has not properly preserved for appellate review his pretrial motion for continuance since it was not renewed at the time of the trial; moreover, appellant's counsel indicated at trial that he was in fact ready for trial."); Riggins v. State, 283 So. 2d 878, 879-80 (Fla. 1st DCA 1973) (holding that the defendant waived his motion for a continuance when he failed to object at the time of trial).

However, even if the defendant had preserved for appellate review the denial of his motion for a continuance, we would still affirm because no prejudice has been demonstrated. A reviewing court will not reverse a trial court's denial of a motion for a continuance unless the trial court abused its discretion. Bouie v. State, 559 So. 2d 1113, 1114 (Fla. 1990). "An abuse of discretion is generally not

6

found unless the court's ruling on a continuance results in undue prejudice to the defendant." Randolph v. State, 853 So. 2d 1051, 1062 (Fla. 2003).

A trial court does not abuse its discretion by denying a motion for a continuance if the defendant will not suffer undue prejudice. See Randolph, 853 So. 2d at 1062. The defendant claims that he suffered prejudice because he did not have sufficient time to fully understand the "drag factor" Wright used to calculate the speed of the two vehicles involved in the crash. For the following reasons, we disagree.

A defendant will generally suffer no prejudice if he was aware of the substance of the witness's testimony and was able to depose the witness prior to trial. See Diaz v. State, 132 So. 3d 93, 118 (Fla. 2013) (finding no abuse of discretion where the trial court denied the defendant's motion for a continuance to prepare a rebuttal to the State's expert's testimony because the defendant was previously aware of the substance of the testimony of the witness); Cooper v. State, 336 So. 2d 1133, 1139 (Fla. 1976) (holding that the trial court did not abuse its discretion by denying a motion for a continuance where an expert was added as a witness on the third day of trial, but the defendant was given an opportunity to depose the witness before the witness testified at the trial).

In the instant case, the defendant was not surprised by Wright's testimony regarding the "drag factor" he relied on in calculating the speed of the vehicles at

7

the time of the crash. All of the accident reconstruction witnesses, including the State's previously listed witnesses, Det. Perez and Sgt. Greenwell, and the defendant's own expert witness, Moss, relied on the "drag factor" to calculate the speed of the vehicles. Sgt. Greenwell's and Det. Perez's drag factor calculations differed substantially from Moss's calculations. Thus, the defendant should have known that the drag factor calculations were in dispute well before the State added Wright as a witness. Additionally, the defendant deposed Wright on February 24, 2014, and had three days to evaluate Wright's calculations before Wright took the stand on February 27, 2014.

We are also unpersuaded by the defendant's argument that it created an undue burden upon defense counsel to prepare for Wright's testimony in the days leading up to the trial. As the Florida Supreme Court stated, "[o]ur rules were not designed to eliminate the onerous burdens of trial practice." Cooper, 336 So. 2d at 1138. The fact that defense counsel had only a few days prior to trial to consider Wright's largely cumulative testimony does not establish undue prejudice. See, e.g., Gause v. State, 270 So. 2d 383, 384 (Fla. 3d DCA 1972) (affirming the trial court's denial of a motion for a continuance and rejecting the defendant's argument that his new defense counsel, who was substituted only five days before trial, had insufficient time to prepare).

8

We reject the defendant's claim that the trial court abused its discretion by denying the defendant's motion for a continuance because the defendant was aware that there was a dispute over the "drag factor" long before trial, permitted to depose Wright prior to trial, given time to consult with his own expert regarding Wright's testimony prior to trial, and provided with the transcript of Wright's deposition testimony before Wright testified.

## II. <u>Denial of Defendant's Motion to Exclude Wright as a Witness</u>

After the defendant asked for a continuing objection to Wright testifying at trial, the trial court timely conducted a <u>Richardson</u> hearing to determine whether the late addition of Wright warranted excluding Wright as a witness. When a trial court conducts a <u>Richardson</u> hearing, an appellate court "review[s] the record to determine if the [<u>Richardson</u>] inquiry was properly made and if the trial court's actions pursuant to the inquiry were proper." <u>Delhall v. State</u>, 95 So. 3d 134, 160 (Fla. 2012). Because the defendant does not dispute that the trial court followed the proper procedure required by <u>Richardson</u>, our review is limited to a determination of whether the trial court abused its discretion in refusing to exclude Wright pursuant to its <u>Richardson</u> inquiry. <u>Id.</u> at 160.

Pursuant to <u>Richardson</u>, the trial court must first determine whether a discovery violation has occurred, and if so, the trial court must "inquire as to whether the violation (1) was willful or inadvertent; (2) was substantial or trivial;

9

and (3) had a prejudicial effect on the aggrieved party's trial preparation." State v. Evans, 770 So. 2d 1174, 1183 (Fla. 2000). The focus of the inquiry is whether and to what degree the discovery violation would cause procedural prejudice to the defendant. Joubert v. State, 847 So. 2d 1056, 1058 (Fla. 3d DCA 2003) ("[T]he defense is procedurally prejudiced if there is a reasonable possibility that the defendant's trial preparation or strategy would have been materially different had the violation not occurred.") (quoting State v. Schopp, 653 So. 2d 1016, 1020 (Fla. 1995)); Jones v. State, 360 So. 2d 1293, 1296 (Fla. 3d DCA 1978) ("The key question in a situation in which a discovery violation is alleged is whether or not the defendant was significantly prejudiced by the state's failure to produce the requested evidence.").

At the outset, we note that the record is unclear as to whether the late addition of Wright as an expert witness was actually a discovery violation. Rule 3.220(b)(1) of the Florida Rules of Criminal Procedure, sets forth the State's discovery obligations. Rule 3.220(b)(1)(A) specifies that within fifteen days after a defendant serves a Notice of Discovery, the State must serve a written discovery exhibit, which among other things, lists all persons known to the prosecutor to have information relevant to the offenses charged or any defenses thereto. Rule 3.220(b)(1)(A) also specifies that the prosecutor must designate the category of

10

each witness. Expert witnesses whom the prosecutor intends to call and who have not provided a report are listed as Category A witnesses in rule 3.220(b)(1)(A)(i).

If the State had intended to call Wright as an expert witness at the time it responded to the defendant's Notice of Discovery, it committed a discovery violation by failing to include Wright's name and address in the discovery response. Additionally, even if Wright had not initially been listed because he had no involvement with the case, and the State had no intention of calling him as a witness, under rule 3.220(j) the State had a continuing obligation to disclose and produce Wright once it determined that he might be called by the State to testify at the defendant's trial.

> **(j) Continuing Duty to Disclose.** If, subsequent to compliance with the rules, a party discovers additional witnesses or material that the party would have been under a duty to disclose or produce at the time of the previous compliance, the party shall promptly disclose or produce the witnesses or material in the same manner as required under these rules for initial discovery.

Fla. R. Crim. P. 3.220(j).

The record, however, reflects that when a new prosecutor was assigned to prosecute this case ten days prior to trial, the new prosecutor decided to list Wright as a potential expert witness after discovering that the defendant had listed a defense expert witness, Moss. The listing of Wright appears to have been a precautionary action because Moss had not yet been deposed and, based upon Moss's report, the State indicated that it probably would not call Wright as a

11

witness. After listing Wright, the State moved for a continuance to allow Wright to evaluate the evidence, the State to consult with Wright, and the defendant to depose Wright. However, after the State deposed Moss and learned that after writing his report he had changed his testimony, the State decided to call Wright as a witness. If the State listed Wright as soon as Wright was consulted and the State decided to add him as a potential witness, then there was no discovery violation, see Burkes v. State, 946 So. 2d 34, 37 (Fla. 5th DCA 2006) ("[Rule 3.220(j)] is violated when the State or the defense **withholds** 'additional witnesses or material' that, if discovered earlier, would have been subject to mandatory disclosure") (emphasis added), and the inquiry as to whether he should be excluded as a witness at trial rests on any prejudice the defendant may suffer as a result of the late listing. See Bryant v. State, 41 Fla. L. Weekly D364 (Fla. 4th DCA Feb. 10, 2016) (finding that the late disclosure of DNA evidence was not a discovery violation, but that the trial court properly considered whether the late disclosure caused the defendant to suffer procedural prejudice and cured the prejudice by granting a continuance rather than excluding the DNA evidence).

Although it appears that there was no discovery violation, because the record is unclear and because the trial court conducted a Richardson hearing, we will briefly address the Richardson factors.

### A. Whether the alleged discovery violation was willful or inadvertent

For the reasons previously discussed in this opinion, the record supports the finding that the alleged discovery violation was not willful. The defendant's expert, Moss, prepared a report detailing his opinions and conclusions. Based on Moss's conclusions, the State did not believe it needed to list and call an expert to refute Moss's testimony. However, when the State deposed Moss and learned that he had changed his calculations and conclusions and that these changes were relevant and material to the issue of causation, the State decided to call Wright as an expert. Specifically, Moss changed his calculations and conclusions as to the speed each of the vehicles were traveling at the time of the crash and the drag coefficient.

**B. <u>Whether the alleged discovery violation was substantial</u>**

The alleged discovery violation was not substantial. Wright's testimony did not materially differ from previously listed State witnesses. His testimony with regard to the drag factor was consistent with the testimony of Sgt. Greenwell. Wright set the drag factor at .42, while Sgt. Greenwell set the drag factor at .40, .48, and .50. These numbers differed substantially from the .26 drag factor calculation relied on by Moss. In addition, Wright's speed calculations were more favorable to the defendant than Det. Perez's calculations. Det. Perez claimed that the defendant was driving at ninety miles per hour, while Wright claimed the defendant was driving at eighty-three miles per hour.

13

But more importantly, the speed of the vehicles was not a significant issue at trial. All of the witnesses, including the defendant's own expert, testified that the defendant was driving far in excess of the speed limit, in the busway, while highly intoxicated, and that the car the victim was a passenger in was traveling slower than the posted speed limit. The posted speed limit was forty miles per hour. Although the State's witnesses calculated the defendant's speed of travel at between eighty-three and ninety miles per hour, even the defendant's expert concluded that the defendant was driving far in excess of the forty miles per hour speed limit, opining that the defendant was traveling at a speed of seventy-two miles per hour upon impact and further concluding that the vehicle the victim was in was only traveling at a speed of between twenty-eight and thirty-eight miles per hour. The defendant's defense was not that he was not speeding or that the driver of the vehicle the victim was in was traveling too fast. His defense was that when he entered the intersection the light was green and thus he had the right-of-way and he did not cause the accident. Therefore, Wright's testimony regarding the rate of speed of the vehicles and his use of a .42 drag coefficient to determine the speed was not a material issue at trial.

### C. **Whether the State's alleged discovery violation was prejudicial**

The defendant makes the same "prejudice" arguments in both his appeal of the trial court's denial of his motion for a continuance and his appeal of the trial

court's denial of his motion to exclude Wright as a witness. He contends that the late addition of Wright prejudiced his ability to prepare a defense because defense counsel had insufficient time to understand the science behind Wright's testimony, and in particular, Wright's use of a .42 drag factor. The defendant suggests that it was therefore error to deny his motion to preclude Wright from testifying. We find that for the same reasons discussed above, the defendant was not procedurally prejudiced by the State's alleged discovery violation.

Even assuming prejudice, excluding Wright as a sanction would have been an improper remedy. While a trial court has broad discretion to impose the sanctions it deems appropriate in order to resolve the prejudice caused by a discovery violation, see Fla. R. Crim. P. 3.220(n)(1), the decision to exclude a witness should only be made where no other sanction or remedy would suffice. State v. Rodriguez, 907 So. 2d 564, 565 (Fla. 3d DCA 2005). Thus, even if the defendant was able to demonstrate some prejudice, the trial court did not abuse its discretion when it denied the defendant's motion to preclude Wright because the prejudice that resulted from the State's late disclosure was cured when the defendant was able to depose Wright and evaluate Wright's testimony days before Wright took the stand at trial. As we previously noted,

> [I]t is manifest that whatever prejudice to a defendant's ability to defend against the charges may be said to arise from a delay in providing him with discovery is cured when he is provided with such

15

discovery, and there is no other impediment to his utilizing it in the preparation of his defense.

State v. Del Gaudio, 445 So. 2d 605, 610 (Fla. 3d DCA 1984). Because defense counsel had sufficient time to consider and prepare for Wright's testimony, any prejudice caused by the State's late disclosure was cured.

## III. Admissibility of the Objected-to Photographs

> [T]rial courts have broad discretion in admitting photographic evidence and the test for the admission of such evidence is not whether the evidence is necessary. Rather, the evidence is subject to the balancing test: whether the evidence is relevant and, if so, whether the probative value outweighs the danger of prejudice.

Armstrong v. State, 73 So. 3d 155, 168 (Fla. 2011)

Only three of the photographs that the defendant objected to were potentially graphic because they depicted the victim's head with an open wound and blood. However, "[t]he mere fact that photographs may be gruesome does not necessarily mean they are inadmissible." Harris v. State, 843 So. 2d 856, 864 (Fla. 2003). These photographs were relevant to demonstrate the extent of the damage caused by the crash and to corroborate the defendant's speed of travel upon impact. We find that the probative value of these photographs was not outweighed by their potential to unduly prejudice the defendant, and therefore, the trial court did not abuse its discretion by admitting these photographs at trial.

## CONCLUSION

We affirm based on the following. First, the defendant did not preserve for appellate review the denial of his motion for a continuance because, at the time of trial, he admitted to the trial court that he was ready to proceed to trial. We also find that even if the issue had been properly preserved, the trial court did not abuse its discretion by denying the defendant's motion for a continuance because the defendant did not demonstrate undue prejudice. Second, we find that the trial court did not abuse its discretion by denying the defendant's motion to preclude the State from calling Wright as a witness because the State's alleged discovery violation was not willful, substantial, or procedurally prejudicial, and because any prejudice was cured when the defendant deposed Wright several days before Wright took the stand, the defendant was able to consult with his own expert witness regarding Wright's testimony prior to trial, and the defendant had a transcribed copy of Wright's deposition testimony prior to Wright testifying at trial. Lastly, we find no abuse of discretion by allowing the State to introduce the objected-to photographs of the victim's body because the photographs were relevant and not unfairly prejudicial.

Affirmed.

17