# Supreme Court of Florida

_____

No. SC19-373
_____

**GARY MICHAEL HILTON,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC19-1766
_____

**GARY MICHAEL HILTON,**
Petitioner,

vs.

**MARK S. INCH, etc.,**
Respondent.

August 26, 2021

PER CURIAM.

Gary Michael Hilton appeals an order of the circuit court

denying his motion to vacate his conviction of first-degree murder

and sentence of death filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus. We have jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const. For the reasons expressed below, we affirm the order of the postconviction court and deny the habeas petition.

## FACTS AND PROCEDURAL BACKGROUND

Hilton was convicted of the December 2007 kidnapping and murder of Cheryl Dunlap and sentenced to death. *Hilton v. State*, 117 So. 3d 742, 746 (Fla. 2013). On direct appeal, this Court summarized the relevant facts as follows:

> Cheryl Dunlap, 46, was last seen alive on December 1, 2007. That morning, Dunlap called a friend, Kiona Hill, and made arrangements to have dinner with her that evening. That afternoon, Dunlap went to Leon Sinks to read, where she was seen by Michael and Vikki Shirley at approximately 1:30 p.m. . . . Dunlap did not arrive for dinner that evening and was missed at church the following morning by Tanya Land. Land went to Dunlap's residence and found her dog, but noticed that her car was missing so she called the police. Steven Ganey of the Wakulla County Sheriff's Office took the missing person report on December 3, 2007.
>
> Dunlap's car, a white Toyota Camry, was found on December 3, 2007, on the side of Crawfordville Highway parked near the woods. The car had deliberate tire punctures in the sidewall that was [sic] later identified as a bayonet piercing. On December 1, the car had received

a disabled vehicle ticket from Florida Highway Patrol Trooper Brian Speigner.  Ganey testified that it appeared that someone had driven into the woods with all four tires intact and punctured the tire after the car had been parked.  Dunlap's purse was recovered in her car, but no money was found.

Dunlap's Ameris Bank account records revealed that Dunlap cashed a check with a drive-through teller at 11:17 a.m. on December 1.  The records further revealed that three cash withdrawals were made at the ATM at Hancock Bank on West Tennessee Street on December 2, 3, and 4, 2007, totaling $700.  In addition, two attempted withdrawals were declined because they exceeded the daily limit.  The video from the security camera at the bank showed that the person making the transactions was wearing a blue and white patterned, long-sleeved shirt, glasses, a hat, and a make-shift mask made from tape.

Dunlap's body was discovered on December 15 by [a hunter] in the Apalachicola National Forest.  Dunlap's body was near a forest road and had been covered with some brush and limbs.  Additionally, her head and hands had been removed.  Dunlap's body was identified using a sample of thigh muscle.  Dr. Anthony Clarke, an associate medical examiner, performed the autopsy. Dr. Clarke opined that Dunlap's head and hands had been removed by an instrument with a sharp blade and that the dismemberment occurred postmortem.  The cause of death was not able to be determined, but Dr. Clarke opined that it was likely to have been a violent homicide.  Additionally, Dr. Clarke noted that there was a significant pre-mortem bruise located on Dunlap's middle to lower back and that the bruise was not consistent with a normal fall injury.  Dr. Clarke estimated that Dunlap's body could have been in the woods for seven to fifteen

days.  Dr. Clarke testified that his best estimate was that Dunlap died between December 5 and December 8, 2007.

On January 9, 2008, investigators found what they believed to be the remains of Dunlap's head and hands in a fire pit at Joe Thomas campsite—approximately seven miles from where her body had been found.  The bone fragments were charred.  Because of the burn damage, no DNA was recoverable from the fragments.  Dr. Anthony Falsetti, a forensic anthropologist, opined that there were two hands represented, that the bones were from an adult, and that the bones were from a person with small hands.

*Id.* at 746-47.

Several witnesses testified to seeing or encountering Hilton during the time of Dunlap's disappearance.  One saw Hilton rummaging through a white Toyota Camry on the side of the road.  Another spoke to him in a convenience store while Hilton was wearing a blue and white patterned shirt matching the shirt seen on the ATM surveillance video.  When Hilton was later arrested in Georgia for a different murder, he pointed Georgia officials to a bayonet he had left on a hiking trail in Georgia.  An FDLE tool mark expert matched the bayonet to the puncture marks in Dunlap's tire.

On June 6, 2008, several officers transported Hilton from Georgia, where he had been in custody for a prior murder, to

Florida.  *Id.* at 748.  Hilton spoke for nearly the entire drive, but was not questioned.  *Id.*  At trial, the State played portions of Hilton's recorded statements made during the drive.  *Id.*  Hilton stated:

> I'm not all bad.  I mean, you got to understand, I mean, I'm sure you can see.  I mean, I'm a [expletive] genius, man.  I'm not a—I'm not all bad.  I just, you know, lost my mind for a little bit.  Lost a grip on myself, man. What can I tell you?  FBI and everybody else is trying to scratch their head, hey, guys don't get started doing my shit at 61 years old.  It just don't happen, you know. Like there's a retired FBI (indecipherable) named Cliff Van, Clifford Van Zandt, that keeps getting himself in the news, talking about me.  And he said, this guy didn't just fall off the turnip truck, he said.  You know, in other words, he's been doing this.  But like I told you before, you know, when I saw you before, I said, remember, I said I'd give you one for free.  Nothing before September, okay?  I mean, I'm not joking, okay?  I just, I got old and sick and couldn't make a living and just lost, flat lost my [expletive] mind for a while, man.  I couldn't get a grip on it.

*Id.*  Additionally, Hilton made incriminating statements to a fellow inmate that were overheard by a correctional officer (Officer Wynn). *Id.* at 748-49.  During the penalty phase, the state presented testimony regarding Hilton's prior murder in Georgia to which he pleaded guilty.  *Id.* at 749.

On February 21, 2011, the jury unanimously recommended that Hilton be sentenced to death and the trial court found six aggravating factors beyond a reasonable doubt, one statutory mitigating factor, and eight nonstatutory mitigating factors. *Id.* at 746. Assigning the noted weight to each aggravator, the trial court found (1) the defendant was previously convicted of a violent felony (great weight); (2) the murder was committed in the course of a kidnapping (great weight); (3) the murder was committed to avoid arrest (moderate weight); (4) the murder was committed for pecuniary gain (some weight); (5) the murder was especially heinous, atrocious, or cruel (HAC) (great weight); and (6) the murder was cold, calculated, and premeditated (CCP) (great weight). *Id.* at 749.

The court also considered and weighed each mitigating circumstance proposed by Hilton and found one statutory mental mitigating factor—at the time of the murder Hilton was under extreme emotional distress (some weight). *Id.* Under the catch-all provision, the trial court considered ten mitigating factors, finding that Hilton established eight of them and rejecting two. *Id.* The

court found (1) Hilton grew up in an abusive household (some weight); (2) Hilton abused drugs, specifically Ritalin (some weight); (3) Hilton was deprived of a relationship with his biological father (moderate weight); (4) Hilton is already serving a life sentence so society is protected (some weight); (5) Hilton served his country in the U.S. military (very little weight); (6) Hilton suffered maternal deprivation and lack of bonding between mother and child (some weight); (7) Hilton was removed from his home and put into foster care when he was a child (some weight); (8) Hilton grew up in a financially poor family (not proven); (9) Hilton suffered a traumatic brain injury as a child (some weight); and (10) Hilton suffers from severe mental defects (not proven). *Id.* at 749-50. The court found beyond a reasonable doubt that the aggravators outweighed the mitigators. *Id.* at 750.

We affirmed Hilton's conviction and sentence on direct appeal. *Id.* at 750-66.[1] Hilton timely filed his initial rule 3.851 motion for

---

1. Hilton raised six claims on direct appeal: (1) the trial court erred in allowing Hilton's statements to law enforcement made during his transport from Georgia to Florida to be introduced at trial because they constitute inadmissible evidence under *Williams v. State*, 110 S. 2d 654 (Fla. 1959); (2) the trial court erred in

postconviction relief on November 26, 2014.  On April 20, 2017,

Hilton filed his Second Motion for Leave to Amend Initial

Postconviction Motion and Incorporated Memorandum of Law,

raising seven claims.  On June 14, 2017, claim 6 was dismissed

without prejudice with leave to amend due to legal insufficiency.

Hilton filed an Amended Claim 6 on July 21, 2017.  An evidentiary

hearing was conducted, after which the trial court entered an order

denying Hilton's motion for postconviction relief on February 12,

2019.

This appeal follows.  Hilton has also filed a petition for writ of

habeas corpus.

---

permitting Dr. Prichard's testimony about allegations of Hilton's
past criminal conduct during the penalty phase; (3) the trial court
erred in permitting Dr. Prichard to remain in the courtroom despite
the sequestration rule; (4) the trial court erred in finding that HAC
and CCP aggravators applied; (5) the trial court erred in rejecting
the lack of capacity mitigating factor and failing to provide reasons
why there was substantial, competent evidence in the record to
support the rejection of the mitigating circumstance; (6) and that
this Court should reexamine its holdings in *Bottoson v. Moore*, 833
So. 2d 693 (Fla. 2002), and *King v. Moore*, 831 So. 2d 143 (Fla.
2002).

## MOTION FOR POSTCONVICTION RELIEF

The majority of the claims presented in Hilton's appeal allege ineffective assistance of trial counsel. To demonstrate entitlement to relief on such a claim, a defendant must meet the following requirements:

> First, counsel's performance must be shown to be deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance in this context means that counsel's performance fell below the standard guaranteed by the Sixth Amendment. *Id.* When examining counsel's performance, an objective standard of reasonableness applies, *id.* at 688, and great deference is given to counsel's performance. *Id.* at 689. The defendant bears the burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). This Court has made clear that "[s]trategic decisions do not constitute ineffective assistance of counsel." *See Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). There is a strong presumption that trial counsel's performance was not ineffective. *See Strickland*, 466 U.S. at 669.
>
> Second, the deficient performance must have prejudiced the defendant, ultimately depriving the defendant of a fair trial with a reliable result. *Strickland*, 466 U.S. at 689. A defendant must do more than speculate that an error affected the outcome. *Id.* at 693. Prejudice is met only if there is a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Both deficient performance and prejudice must be shown. *Id.* Because

both prongs of the *Strickland* test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual findings that are supported by competent, substantial evidence, but reviewing the circuit court's legal conclusions de novo.

*Bradley v. State*, 33 So. 3d 664, 671-72 (Fla. 2010). Because *Strickland* requires a defendant to establish both prongs, if one prong is not met, "the court is not required to analyze whether the defendant has established the other prong." *Frances v. State*, 143 So. 3d 340, 347 (Fla. 2014).

### Failure to Present Available Mitigation

In his first claim, Hilton argues that trial counsel was ineffective during the penalty phase by not presenting available mitigation evidence. Although mitigation evidence existed that was not presented to the jury, the lack of such a presentation is not dispositive of ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984).

To satisfy the first prong of *Strickland*, a defendant must identify specific acts or omissions "of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards." *Allen v. State*, 261 So. 3d

- 10 -

1255, 1269 (Fla. 2019) (quoting *Peterson v. State*, 221 So. 3d 571, 583 (Fla. 2017)). Accordingly, "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). "Counsel cannot be deemed ineffective merely because current counsel disagrees with trial counsel's strategic decisions." *Id.*

In Hilton's case, the finding of one statutory mitigator and eight nonstatutory mitigators undermines the argument that presentation of further mitigation would have altered Hilton's resulting sentence or that trial counsel was deficient. For example, where this Court has concluded that performance was deficient, the failure to present mitigation was significant to the extent that either minimal, or no, mitigating factors were established. *See, e.g.*, *Parker v. State*, 3 So. 3d 974, 984 (Fla. 2009) (concluding that, as a direct result of counsel's deficient performance, "the evidence presented at the penalty phase was not enough to support the establishment of *any* nonstatutory mitigators"). Moreover, even

though the trial court rejected two of the ten mitigators presented—that Hilton grew up in a financially poor family and that Hilton suffers from severe mental defects, Hilton fails to demonstrate how testimony from the evidentiary hearing supports these unproven mitigators to the extent that the outcome would have been different. *Hilton*, 117 So. 3d at 749.

Ineffective assistance may occur if counsel was placed on notice as to mitigation leads but did not pursue them. *State v. Bright*, 200 So. 3d 710, 732 (Fla. 2016). However, that is not what occurred here. In Hilton's case, trial counsel knew of further mitigation evidence but made a strategic decision not to present it to the jury because it could have bolstered a negative view of Hilton. This distinction is significant because, in evaluating prejudice, a court must consider all the relevant evidence that would have come in had counsel pursued a different path, including evidence that would have opened the door to more damaging evidence. *Douglas v. State*, 141 So. 3d 107, 123 (Fla. 2012); *see also Reed v. State*, 875 So. 2d 415, 437 (Fla. 2004) ("An ineffective assistance claim does not arise from the failure to present mitigation evidence where that

evidence presents a double-edged sword."). Furthermore, we have held that a trial counsel's decision to rely on expert witnesses, as trial counsel did in the present case, is reasonable. *See Bailey v. State*, 151 So. 3d 1142, 1152 (Fla. 2014) (holding that trial counsel did not render deficient performance by relying on expert witnesses and choosing not to call lay witnesses).

Regardless, Hilton fails to demonstrate prejudice because he has not shown that "there is a reasonable probability that the balance of aggravating and mitigating circumstances would have been different" had trial counsel presented the additional mitigation evidence of Hilton's life history. *Occhicone v. State*, 768 So. 2d 1037, 1049 (Fla. 2000); *see also Matthews v. State*, 288 So. 3d 1050, 1059 (Fla. 2019). Where the additional mitigation is minor or cumulative and the aggravating circumstances substantial, we have held that confidence in the outcome of the penalty phase is not undermined. *See, e.g., Breedlove v. State*, 692 So. 2d 874, 877-78 (Fla. 1997); *see also Asay v. State*, 769 So. 2d 974, 988 (Fla. 2000) ("[T]his Court has reasoned that where the trial court found substantial and compelling aggravation . . . there was no reasonable

- 13 -

probability that the outcome would have been different had counsel presented additional mitigation evidence of the defendant's abused childhood, history of substance abuse, and brain damage."). Because the evidence of aggravation in Hilton's case is overwhelming, he has not established a reasonable probability that, with the additional evidence of mitigation presented at the evidentiary hearing, he would have received a life sentence. *See Hannon v. State*, 941 So. 2d 1109, 1137 (Fla. 2006) ("Based on the brutal and disturbing nature of these murders, there is no reasonable probability that Hannon would have received a life sentence.").

Therefore, Hilton fails to demonstrate either prong of *Strickland* and is not entitled to relief.

### Disarray Among Defense Team

Hilton next argues that his trial team was ineffective due to disarray and division among his lawyers. However, Hilton's allegations fail to allege specific deficient acts that present a reasonable probability of affecting the outcome of his case.

Therefore, Hilton's argument does not meet either prong of *Strickland.*

Hilton's generalized claims regarding the trial team's internal division fail to satisfy the deficient performance standard under *Strickland* because he fails to link that general discord to any specific acts of deficient performance that occurred during the thirty-six months his case was pending. *See, e.g., Blackwood v. State*, 946 So. 2d 960, 967 (Fla. 2006) (holding that substance abuse and personal issues attributed to counsel were insufficient to prove deficient performance because the allegations were not linked to any specific deficient acts).

Hilton's only specific allegation of deficient performance involves testimony from Officer Wynn who overheard incriminating statements made by Hilton to a fellow inmate. However, the circuit court recognized that the State's failure to disclose Officer Wynn on its witness list was the primary reason that trial counsel was surprised by Officer Wynn's testimony. Hilton does not detail specifically how additional preparation would have enabled trial counsel to challenge this incriminating testimony in a more effective

- 15 -

manner. Moreover, Hilton's statements overheard by Officer Wynn were not the only incriminating statements made by Hilton. Hilton also made incriminating statements to law enforcement during his transport from Georgia to Florida, and those statements were presented to the jury. *Hilton,* 117 So. 3d at 748. Therefore, Hilton's allegations of deficient performance are insufficient to satisfy *Strickland* because Hilton has not linked any of these allegations to the outcome of the case.

**Cohesive Guilt and Penalty Phase Strategy**

Hilton next argues that trial counsel was ineffective for inconsistently relying on circumstantial evidence in the guilt phase and mental health mitigation in the penalty phase. While trial counsel should formulate a cohesive strategy for both the guilt and penalty phases, Hilton's argument does not meet either prong of *Strickland.*

Without more, this Court has rejected ineffective assistance of counsel claims where a defendant asserted that trial counsel should have presented mitigating evidence when that mitigating evidence was inconsistent with the guilt phase theory. *See, e.g., Blanco v.*

*State*, 963 So. 2d 173, 179 (Fla. 2007) (denying an ineffective assistance of counsel claim where "the mitigators Blanco argue[d] should have been presented at his penalty phase [were] inconsistent with his theory of the case: that he is innocent of [the] murder").

Moreover, failing to investigate and present mental health mitigation is not dispositive of ineffective assistance of counsel. The record reflects that Hilton's trial counsel had specific reasons for the strategy adopted. Further, counsel cannot be deemed ineffective for pursuing a strategy which the defendant agrees with, as is true in the present case given that Hilton wanted to contest everything. *See Hannon v. State*, 941 So. 2d 1109, 1126 (Fla. 2006). Accordingly, Hilton is not entitled to relief because he has not overcome the presumption that trial counsel's performance "might be considered sound trial strategy." *Strickland*, 466 U.S. at 687 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

### *Hurst*

Hilton next argues that the postconviction court erred in denying his claim that he is entitled to relief under *Hurst v. Florida*, 577 U.S. 92 (2016), and *Hurst v. State*, 202 So. 3d 40 (Fla. 2016),

*receded from in part by State v. Poole*, 297 So. 3d 487 (Fla. 2020).

Since the postconviction court ruled on this claim, this Court has

changed the applicable analysis. Specifically, in *State v. Poole*, 297

So. 3d 487, 507 (Fla. 2020), this Court "recede[d] from *Hurst v.*

*State* except to the extent it requires a jury unanimously to find the

existence of a statutory aggravating circumstance beyond a

reasonable doubt."

Hilton had both prior (Georgia murder) and contemporaneous

(kidnapping) felony convictions. *Hilton*, 117 So. 3d at 749.

Pursuant to *Poole*, there is no *Hurst* error in Hilton's case because a

unanimous jury finding establishes the existence of at least one

statutory aggravating circumstance beyond a reasonable doubt.

*Poole*, 297 So. 3d at 508 (contemporaneous felony convictions

"satisfied the requirement that a jury unanimously find a statutory

aggravating circumstance beyond a reasonable doubt"); *see also,*

*e.g., Boyd v. State*, 291 So. 3d 900, 901 (Fla. 2020) (holding that a

contemporaneous kidnapping foreclosed *Hurst* relief).

## Eligibility for the Death Penalty

Hilton next argues that trial counsel was ineffective for failing to challenge the applicability of the death penalty to him in light of his severe mental health issues. However, we have consistently rejected the argument that mentally ill inmates can never be executed. *See, e.g.*, *Simmons v. State*, 105 So. 3d 475, 511 (Fla. 2012) (holding to be without merit the claim that persons with mental illness must be treated similarly to those with an intellectual disability due to reduced culpability); *Johnston v. State*, 27 So. 3d 11, 26 (Fla. 2010) (finding no merit in the claim that mentally ill persons are similar to and should be treated the same as juveniles who are exempt from execution); *Lawrence v. State*, 969 So. 2d 294, 300 n.9 (Fla. 2007) (rejecting assertion that the Equal Protection Clause requires extension of *Atkins*[2] to the mentally ill).

Because counsel cannot be considered ineffective for failing to raise a meritless argument, the postconviction court correctly denied the claim. *See Matthews v. State*, 288 So. 3d 1050, 1065 (Fla. 2019) (citing *Raleigh v. State*, 932 So. 2d 1054, 1064 (Fla.

---

2. *Atkins v. Virginia*, 536 U.S. 304 (2002).

2006)).  Moreover, because a showing of deficient performance is not possible for a meritless claim, no prejudice analysis is required. *See Hall v. State*, 212 So. 3d 1001, 1014, 1033 (Fla. 2017); *see also Allen v. State*, 261 So. 3d 1255, 1269 (Fla. 2019).  Accordingly, Hilton is not entitled to relief.

**Denial of Cause Challenges**

Hilton next argues that trial counsel was ineffective for its failure to preserve for appeal the denial of cause challenges during jury selection.  In order to establish actual bias, a postconviction litigant must prove "bias-in-fact that would prevent service as an impartial juror."  *Carratelli v. State*, 961 So. 2d 312, 324 (Fla. 2007); *see also Smithers v. State*, 18 So. 3d 460, 464 (Fla. 2009) ("Without a showing of such actual bias of the juror, the defendant cannot establish the prejudice required by *Strickland*.").  The evidence of actual bias "must be plain on the face of the record."  *Id.*  With respect to jury selection claims, the standard for obtaining relief in postconviction "is much more strict" than the "relatively lenient" direct appeal standard of establishing preserved error.  *See Carratelli*, 961 So. 2d at 318, 320.

To properly preserve an issue for appellate review a litigant must raise the issue with timeliness and specificity. *See* § 924.051(1)(b), Fla. Stat. (2019); *see also Castor v. State*, 365 So. 2d 701, 703 (Fla. 1978). This requires two objections: (1) a contemporaneous objection that puts the trial court on notice; and (2) a second objection before the jury is sworn. *See Carratelli*, 961 So. 2d at 318. Failure to lodge the second objection indicates abandonment of the initial objection. *See Zack v. State*, 911 So. 2d 1190, 1204 (Fla. 2005) (citing *Joiner v. State*, 618 So. 2d 174, 176 (Fla. 1993)).

Hilton fails to identify a specific cause challenge that counsel should have preserved. This general allegation is insufficient to demonstrate deficient performance. *See Jones v. State*, 998 So. 2d 573, 584 (Fla. 2008). Because a showing of deficient performance is not possible, this Court need not conduct a prejudice analysis. Nevertheless, because Hilton fails to establish actual bias on the part of any juror and, therefore, fails to demonstrate prejudice, the postconviction court properly denied the claim of ineffective assistance.

## Cumulative Error

Because Hilton has not demonstrated any deficiencies, Hilton's claim of cumulative error fails.

## PETITION FOR WRIT OF HABEAS CORPUS

## Change of Venue

In his habeas petition, Hilton argues that appellate counsel was ineffective for failing to challenge the trial court's denial of his motion for a change of venue. The standard for a claim of ineffective assistance of appellate counsel mirrors the *Strickland* standard for ineffective assistance of trial counsel: the petitioner must demonstrate deficient performance and resulting prejudice. *Frances v. State*, 143 So. 3d 340, 358 (Fla. 2014).

Change of venue decisions are subject to an abuse of discretion standard. *State v. Knight*, 866 So. 2d 1195, 1209 (Fla. 2003). The movant must demonstrate two prongs: "(1) the extent and nature of any pretrial publicity; and (2) the difficulty encountered in actually selecting a jury." *Rolling v. State*, 695 So. 2d 278, 285 (Fla. 1997). While "[m]edia coverage and publicity are only to be expected when murder is committed," the dispositive

question is "not whether the prospective jurors possessed any knowledge of the case, but, rather, whether the knowledge they possessed created prejudice against [the defendant]." *Davis v. State*, 461 So. 2d 67, 69 (Fla. 1984). Moreover, a change of venue is not necessary if prospective jurors can assure the court during voir dire that they are impartial despite their extrinsic knowledge. *Id.*

Hilton does not articulate any specific biased juror and, therefore, does not offer specific allegations of deficient performance. Furthermore, Hilton has not demonstrated that any jurors who may have been biased were not properly rehabilitated. Moreover, Hilton fails to specify how the denial of the change of venue motion affected the outcome of his case. *See Gonzalez v. State*, 253 So. 3d 526, 529 (Fla. 2018) (holding no ineffective assistance occurred where the defendant did "not point to a specific biased juror who served, nor . . . specifically allege which juror, if any, was not properly rehabilitated during voir dire or . . . was unable to [be struck] either for cause or by using [a] peremptory strike[]."). Therefore, Hilton is not entitled to relief because his

argument does not meet either prong of *Strickland*, and appellate counsel was not ineffective for failing to raise this claim.

## Judicial Bias

Hilton next argues that appellate counsel was ineffective for failing to raise a judicial bias claim against Judge Hankinson. Hilton argues that Judge Hankinson denigrated trial counsel and treated trial counsel differently from counsel for the State. However, a claim of judicial bias would have been procedurally barred on direct appeal due to the lack of a motion to disqualify. *See Mungin v. State*, 932 So. 2d 986, 994 (Fla. 2006) ("[A] claim of judicial bias is procedurally barred on direct appeal if the defendant fails to seek disqualification of the judge after having specific knowledge of the grounds for disqualification."); *see also Schwab v. State*, 814 So. 2d 402, 407 (Fla. 2002). While trial counsel moved for a mistrial, the requisite motion to disqualify was never filed. *See Thompson v. State*, 990 So. 2d 482, 489 (Fla. 2008) (rejecting claim that "a defendant is automatically entitled to postconviction relief simply by demonstrating that the denial of a motion for

disqualification, if one had been properly filed by counsel, would have been reversed on appeal").

Even if this claim would not have been procedurally barred, Hilton nevertheless fails to demonstrate any clear instance of actual bias. *See Schwab*, 814 So. 2d at 414 (concluding that judicial bias claims based on adverse rulings are legally insufficient to warrant disqualification). Hilton's conclusory allegations of deficient performance remain insufficient to satisfy *Strickland. See Bradley v. State*, 33 So. 3d 664, 685 (Fla. 2010); *see also Conahan v. State*, 118 So. 3d 718, 734-35 (Fla. 2013). Furthermore, Hilton's judicial bias argument is related to Judge Hankinson's actions towards trial counsel, not himself. "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Therefore, Hilton fails to demonstrate actual judicial bias.

Based upon the foregoing, this claim is procedurally barred, and further, does not satisfy *Strickland.*

## Cause Challenges

Hilton next argues that appellate counsel was ineffective in not raising the trial court's denial of cause challenges concerning biased jurors due to their knowledge of Hilton's other crimes and their predisposition to vote for the death penalty.

Similar to Hilton's argument in his motion for postconviction relief regarding cause challenges, this claim is governed by the preservation requirements explained in *Carratelli v. State*, 961 So. 2d 312, 324 (Fla. 2007). *See Salazar v. State*, 188 So. 3d 799, 821 (Fla. 2016) (citing *Carratelli*, 961 So. 2d at 324). Again, under *Carratelli*, the preservation of a challenge to a potential juror requires more than one objection: (1) a contemporaneous objection that puts the trial court on notice; and (2) a second objection before the jury is sworn. *See Carratelli*, 961 So. 2d at 318. Failure to lodge the second objection indicates abandonment of the initial objection. *See Zack v. State*, 911 So. 2d 1190, 1204 (Fla. 2005) (citing *Joiner v. State*, 618 So. 2d 174, 176 (Fla. 1993)); *see also, e.g., Salazar*, 188 So. 3d at 821.

When a defendant preserves a cause challenge, he must demonstrate on appeal both that the trial court erred in determining the juror's competency and that the denial of the challenge resulted in prejudice. *Carratelli*, 961 So. 2d at 319 (citing *Conde v. State*, 860 So. 2d 930, 941 (Fla. 2003)). Where the record demonstrates a reasonable doubt about a juror's ability to be impartial, the trial court abused its discretion in denying the cause challenge. *Id.* (citing *Busby v. State*, 894 So. 2d 88, 95 (Fla. 2004)). Having demonstrated error, the defendant must then demonstrate that the error requires reversal. *Id.* at 319. The "expenditure of a peremptory challenge to cure the trial court's improper denial of a cause challenge constitutes reversible error if a defendant exhausts all remaining peremptory challenges and can demonstrate that an objectionable juror has served on the jury." *Id.* (quoting *Busby*, 894 So. 2d at 96-97). Even where the reviewing court concludes that a juror who actually served on the jury should have been stricken, reversal is improper if the error has not been preserved. *Id.* at 319-20 (citing *Singer v. State*, 109 So. 2d 7, 19 (Fla. 1959), (finding

reasonable doubt as to one juror's impartiality but refusing relief on this claim because it was not preserved for review)).

Hilton's claim is procedurally barred because it was already raised in his motion for postconviction relief filed under rule 3.851, in which Hilton faulted counsel for not preserving challenges to prospective jurors—an alleged deficiency which, of course, would have precluded a meritorious appeal of those issues.[3] Hilton argues that his postconviction and habeas claims are different because one raises concerns over asserting the claim and the other raises concerns over preserving the claim. However, this distinction is meritless. For example, in *Schwab v. State*, this Court held that a habeas claim of judicial bias was procedurally barred because it was raised in the motion for postconviction relief even though the postconviction claim concerned the lack of the claim being asserted

---

3. *Schwab v. State*, 814 So. 2d 402, 414 (Fla. 2002) ("Schwab's first habeas claim is procedurally barred as it was raised and rejected in our discussion of Schwab's rule 3.850 appeal. . . . Appellate counsel cannot be deemed ineffective for failing to raise an issue that was not pursued or objected to at trial."); *see also Parker v. Dugger*, 550 So. 2d 459, 460 (Fla. 1989) ("[H]abeas corpus petitions are not to be used for additional appeals on questions which could have been . . . or were raised on appeal or in a rule 3.850 motion, or on matters that were not objected to at trial.").

by counsel and the habeas claim concerned the failure to preserve the claim. 814 So. 2d at 409-14. Hilton is not entitled to relief.

## Panel Strike

Hilton next argues that appellate counsel was ineffective for failing to challenge the trial court's denial of a motion to strike the entire panel of jurors exposed to a prejudicial newspaper article read aloud by a potential juror. The article included details about Hilton's previous murder conviction in Georgia.

Appellate counsel was not ineffective for failing to raise the trial court's denial of striking the panel because this claim has no merit given that it was not properly preserved. *Rutherford v. Moore*, 774 So. 2d 637, 643 (Fla. 2000) ("If a legal issue 'would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective.") (quoting *Williamson v. Dugger*, 651 So. 2d 84, 86 (Fla. 1994)).

Again, to preserve a challenge regarding a juror strike, a party must lodge two objections: (1) a contemporaneous objection that

puts the trial court on notice; and (2) a second objection before the jury is sworn. *See Carratelli*, 961 So. 2d at 318. Hilton's trial counsel made an initial objection to strike the entire voir dire panel after discovering the article exposure. Trial counsel later attempted to renew the objection, but at that point it was untimely because the jury had already been sworn. Trial counsel had made a general objection prior to the jury being sworn by simply stating: "I will have the prior objections put on the record, Judge." However, such a general objection is insufficient to preserve a cause challenge or to preserve a strike of the entire venire panel. *See Young v. State*, 141 So. 3d 161, 165 (Fla. 2013) (asserting that a boilerplate objection is inadequate); *see also Gore v. State*, 964 So. 2d 1257, 1265 (Fla. 2007) (citing *F.B. v. State*, 852 So. 2d 226, 229 (Fla. 2003)); *State v. Pacchiana*, 289 So. 3d 857, 862 (Fla. 2020), *cert. denied*, 141 S. Ct. 173 (2020). Therefore, Hilton is not entitled to relief because any claim raised by appellate counsel would have been meritless given that trial counsel's objections on this issue were untimely and too generalized to properly preserve the argument.

**Motion to Continue**

Hilton next argues that appellate counsel was ineffective for not challenging the trial court's denial of a motion to continue. Trial counsel sought a continuance based on the magnitude of the case and the State's noncompliance with discovery guidelines. Hilton mentions two motions for continuance filed by trial counsel, the latter of which was filed on January 26, 2011—approximately one week before the commencement of trial on February 2, 2011. Trial counsel renewed the motion for continuance at the start of trial on February 4, 2011.

The proper standard for reviewing a denial of a continuance is abuse of discretion. *See Bouie v. State*, 559 So. 2d 1113, 1114 (Fla. 1990). Hilton fails to demonstrate how appellate counsel was ineffective for failing to challenge the trial court's denial of the continuance because he fails to establish that he suffered any prejudice. *See Guillen v. State,* 189 So. 3d 1004, 1008 (Fla. 3d DCA 2016) (citing *Bouie*, 559 So. 2d at 1114, and *Randolph v. State*, 853 So. 2d 1051, 1062 (Fla. 2003)). Specifically, Hilton fails to demonstrate how the lack of a continuance impacted trial counsel's

ability to cross-examine the witnesses referenced in the renewed motion. *See Bouie*, 559 So. 2d at 1114; *see also Fennie v. State*, 648 So. 2d 95, 97-98 (Fla. 1994). Hilton highlights the large number of potential witnesses that trial counsel would like to have interviewed and deposed prior to the start of trial. However, an "undue burden" on counsel remains an insufficient basis to grant a motion for continuance. *See Guillen*, 189 So. 3d at 1009. Therefore, this claim would have been unlikely to succeed on appeal.

Because Hilton fails to demonstrate deficient performance, this Court need not conduct a prejudice analysis. Nevertheless, Hilton only raises a conclusory allegation of ineffectiveness which remains insufficient to satisfy the prejudice prong of *Strickland*. *See Jones v. State*, 998 So. 2d 573, 584 (Fla. 2008).

## Admitting Evidence

Hilton next argues that appellate counsel was ineffective for failing to raise the trial court's abuse of discretion in admitting into evidence charred human bone fragments found at a campsite near where Hilton was seen. Hilton claims that the prejudicial effect of

this evidence outweighed the probative value. However, Hilton fails to demonstrate deficient performance under *Strickland* because it is likely that a reasonable juror could fairly infer from the charred human bones that Hilton murdered the victim. While the State did not establish that the bones came from the victim's body, there was significant other evidence which tied inferences together and strongly suggested such. Therefore, Hilton fails to establish how the absence of a challenge to the evidence of charred human bones compromised the appellate process "to the degree that confidence in the correctness of the appellate result is undermined," and is not entitled to relief. *Nixon v. State*, 932 So. 2d 1009, 1023 (Fla. 2006).

## CONCLUSION

For the foregoing reasons, we affirm the order of the postconviction court and deny the petition for writ of habeas corpus.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, and COURIEL, JJ., concur.
GROSSHANS, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Leon County,
James C. Hankinson, Judge
Case No. 372008CF000697AXXXXX
And an Original Proceeding – Habeas Corpus

Robert A. Morris of The Law Offices of Robert A. Morris, LLC, Tallahassee, Florida,

for Appellant/Petitioner

Ashley Moody, Attorney General, and Michael T. Kennett, Assistant Attorney General, Tallahassee, Florida,

for Appellee/Respondent